**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **AMY DOYEL, MICHAEL DOYEL, ALEX PRODES and DAN PRYOR, individually, and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **Case No.:  4:08-CV-01198-CAS** |
| **v.** | **Judge Charles A. Shaw** |
| **McDONALD'S CORPORATION,** | |
| **Defendant.** | |

<u>**PLAINTIFFS' MOTION AND MEMORANDUM FOR CLASS CERTIFICATION**</u>

STEPHAN ZOURAS, LLP
Ryan F. Stephan
James B. Zouras
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 *f*
rstephan@stephanzouras.com

CUNEO GILBERT & LaDUCA
Jonathan W. Cuneo
Jon A. Tostrud
Cuneo Gilbert & LaDuca, LLP
507 C. St., NE
Washington, D.C. 20002
Telephone (202) 789-3960
Fax (202) 789-1813
jtostrud@cuneolaw.com

BARTIMUS, FRICKLETON,
ROBERTSON & GORNY, PC
Edward D. Robertson, Jr., MBE #27183
Mary D. Winter, MBE # 38328
Anthony L. DeWitt, MBE 41612
715 Swifts Highway
Jefferson City, MO  65109
(573) 659-4454
(573) 659-4460 (Fax)
aldewitt@sprintmail.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ...................................................................................... 1

APPLICABLE LEGAL STANDARDS ......................................................... 3

    I.    THE PURPOSE OF CLASS ACTIONS ........................................... 3

    II.    THE COURT'S CIRCUMSCRIBED ASSESSMENT OF FACTS - MERITS ARE NOT AT ISSUE OR RESOLVED ........................................ 4

    III.    LIBERAL APPLICATION OF RULE 23 IN FAVOR OF CLASS CERTIFICATION. 6

FACTUAL BACKGROUND ....................................................................... 6

    I.    PLAINTIFFS' COMMON CLAIMS ............................................... 6

    II.    PLAINTIFFS ARE SIMILARLY SITUATED ................................. 7

    III.    DEFENDANTS FAILED TO MAINTAIN ACCURATE TIME RECORDS ............. 11

    IV.    DEFENDANTS SHAVED PLAINTIFFS TIME TO REDUCE THEIR PAY AND SAVE DEFENDANTS MILLIONS IN PAYROLL EXPENSES .......................... 14

    VI.    PLAINTIFFS PERFORMED OTHER WORK WITHOUT PAY ............... 18

    VII.    DEFENDANTS FAILED TO ENSURE THAT PLAINTIFFS WERE PAID FOR ALL TIME WORKED .......................................................... 18

LEGAL ARGUMENT ............................................................................... 21

    I.    THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED ..................... 21

    II.    THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED ................... 27

CONCLUSION ....................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Scott Labor LLC*, 2006 WL 27118, at 5 (N.D. Ill. Jan. 3, 2006)................................... 33

*Allapattah Servs. v. Exxon Corp.*, 188 F.R.D. 667, 674 (S.D. Fla. 1999) .................................. 29

*Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007)............. 13

*Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) .................................................................. 3

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ................................................ 13

*Bell v. Farmers Ins. Exch.*, 115 Cal. App.4th 715, 744 (Cal Ct. App. 2004) .............................. 32

*Belles v. Schwiker*, 720 F.2d 509, 515 (8th Cir. 1983). ............................................................... 21

Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 298 (5th Cir. 2001) .............................. 31

*Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005) ......................................................... 5

*Brancheau v. Residential Mortg.*, 182 F.R.D. 579, 589 (D. Minn. 1998) .................................... 26

*Braun v. Wal-Mart, Inc.,* 2003 WL 22990114 (Minn. Dist. Ct. Nov. 3, 2003) ........................... 30

*Brzychnalski v. Unesco, Inc.*, 35 F. Supp.2d 351 (S.D.N.Y. 1999) .............................................. 30

*Caroline C. v. Johnson*, 174 F.R.D. 452, 459 n.6 (D. Neb. 1996)................................................ 6

*Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) ...................................... 13

*Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990)................................................ 25

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 290 (2d Cir. 2008); *see also Reich v. Stewart*, 121
     F.3d 400, 407 (8th Cir. 1997) ............................................................................................... 13

*DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) ............................................. 22

*Dole v Solid Waste Servs.*, 733 F. Supp. 895, 902 (E.D. Pa. 1980)............................................. 31

*Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir.1991)...................................... 19

*Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977).................................................. 25

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ............................................................... 4

*Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) ....................................................... 4

*Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) ................................................ 22

*General Tele. Co. v. EEOC*, 446 U. S. 318, 330 (1980) ................................................................ 25

Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 796, 798 (10th Cir. 1970) ....................... 32

*Green v. Wolf Corp.*, 406 F.2d 291, 297 (2d Cir. 1968). ................................................................ 3

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) ........................................................................... 3

*Gutierrez v. Kovecavich "5" Farms*, 2004 WL 3745224 (E.D. Cal. 2004) ................................ 30

*Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 225-27 (Mo. Ct. App. 2007) .......................... 7

*Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d at 225-27 ................................................................ 30

*Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972) ................................................................ 3

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) ....................................... 33

*IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) ..................................................................................... 30

*In re Farmers Ins. Exch.*, 2003 WL 23669376 at 7 ..................................................................... 34

*In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 604 (D. Minn. 1999) .............................. 31

*In re Memorex Sec. Cases*, 61 F.R.D. 88, 93 (N.D. Cal. 1973) ..................................................... 6

*Jackson v. Rapps*, 132 F.R.D. 226 (W.D. Mo. 1990) .................................................................... 5

*Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983) ............................................................. 29

*Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987) .............................. 29

*Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla. 1997) .............................................. 29

*Leyva v. Buley*, 125 F.R.D. 512, 518 (E.D. Wash. 1989) ............................................................. 30

*Liles v. American Corrective Counseling Services, Inc.*, 231 F.R.D. 565, 572-73 (S.D. Iowa
    2005) .......................................................................................................................................... 6

*Linder v. Thrifty Oil Co.*, 2 P.3d 27, 34 (Cal. 2000) ..................................................................... 5

*Lockwood Motors Inc. v. General Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995)...... 21, 30

*Lowers v. United States*, 2001 WL 200869 (S.D. Iowa May 2, 2001) .................................... 4, 21

*McClain v. Papka*, 108 S.W.3d 48, 53 (Mo. Ct. App. 2003)........................................................... 7

*McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir. 1988)........................................................... 30

*Mendez v. Radec Corp.*, 232 F.R.D. 78, 91 (W.D.N.Y. 2005) ...................................................... 21

*Monnel v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)..................................... 31

*Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999) ............................ 24

*Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 206 (Mo. Ct. App. 2006)................................... 7

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982)....................................... 22

*Osmer v. Aerospace Corp.*, 1982 U.S. Dist. Lexis 15927, at *3-4, 35 Fed. R. Serv. 2d 766 (C.D. Cal. 1982).................................................................................................................................... 5

*Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982) .................................................. 21

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ................................................ 22

*re Federal Skywalk Cases*, 95 F.R.D. 483, 488 (W.D. Mo. 1982) ............................................... 33

*Reich v. Department of Conservation & Natural Resources*, 28 F.3d 1076, 1082 (11th Cir. 1994) ....................................................................................................................................................... 13

*Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) ............................................ 5

*Selzer v. Board of Educ.*, 112 F.R.D. 176, 178 (S.D.N.Y. 1986). .................................................. 6

*Spoerle v. Kraft Foods Global, Inc.*, 2008 WL 2002221 (W.D. Wisc. May 6, 2008)................. 30

*Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at *14 (S.D.N.Y. Sept. 29, 2006).... 23

*U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775 (6th Cir. 1995) ................................ 30

*Velez v. Majik Cleaning Service, Inc.*, 2005 WL 106895 (S.D.N.Y. Jan. 19, 2005) .................... 30

Walton v. Franklin Collection Agency, Inc., 190 F.R.D. 404, 412 (N.D. Miss. 2000) ............... 32

*Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941) ........................................................... 34

*Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986).................................................. 25

*Williams v. Empire Funding Corp.*, 227 F.R.D. 362, 371 (E.D. Pa. 2005) .................................... 6

*Zuccarini v. Hoechst (In re Cardizem CD Antitrust Litig.)*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) ............................................................................................................................. 5

**Statutes**

§ 290.520 RSMo. (2008) ............................................................................................ 11

§290.500 RSMo. (2007) .......................................................................................... 2, 6

**Other Authorities**

*Rules Advisory Committee's Notes to 1966 Amendments to Rule 23*, 39 F.R.D. 69, 102-03 (1966). ................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... 3

**Treatises**

Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, §7.24 at 79 (4th ed. 2002) .......................................................................................................... passim

WRIGHT & MILLER §1788 at 528-29 ......................................................................... 28

## INTRODUCTION

Plaintiffs, on behalf of themselves all others similarly situated, by and through their attorneys, move the Honorable Court for an Order certifying this case as a class action under Rule 23.  Plaintiffs ask the Court to certify the following class:

> All individuals who were employed or are currently employed by the Defendants, their subsidiaries or affiliated companies, as hourly paid employees in the state of Missouri at any time during the relevant statute of limitations period.

Plaintiffs also request the Court approve notice of the pending action to the class and appoint Plaintiffs' counsel to serve as class counsel pursuant to Rule 23(g).

The primary Defendant in this case, McDonald's Corporation ("McDonald's), is one of the world's largest corporations.  McDonald's revolutionized the restaurant industry by streamlining and standardizing the way in which it prepared hamburgers, french-fries and other fast food to the tune of over 60 billion customers served. Likewise, McDonald's has standardized the way in which it hires and trains employees, oversees their production and compensates them.  To help them do so, McDonald's has implemented standardized policies, time keeping practices and pay rates for all its employees, including the class members in this case.  McDonald's corporate culture of uniformity and standardization provides a solid foundation for certification in this case.

Unfortunately, the Defendants implemented a similar systematic scheme to deprive several thousand class members working in approximately 30-40 Missouri restaurants of hard earned wages in this case.[1]  Throughout the class period, Defendants systematically: 1) failed to maintain accurate time records as required by state and federal law; 2) edited or "shaved" Plaintiffs' time records to reduce their pay; and, 3) required Plaintiffs to work without pay.  Evidence, including testimony from McDonald's

---

[1]  Due to sales and acquisitions, the number of subject Missouri restaurants has fluctuated between 30-40 restaurants.  At the time it filed its motion to remove, McDonald's confirmed it presently employed 2,021 hourly employees in the State of Missouri.   (*See* Doc. No. 1)  Plaintiffs believe the actual number of class members exceeds 4,000 plaintiffs.

executives, Defendants' own documents and statistical data confirms Defendants violated the Missouri minimum wage law, §290.500 RSMo. (2007) and breached their written agreement to pay employees for all time worked.. As a result of their common schemes, Defendants have unjustly benefited by saving millions of dollars in payroll expenses.

Notwithstanding Defendants' systematic and widespread wage and hour violations, the sole issue addressed when deciding class certification is not the merit of Plaintiffs' claims, but whether they are certifiable on a class-wide basis.   In this case, indisputable evidence weighs clearly in favor of certification because it shows: 1) Plaintiffs have alleged common claims (*See* Doc. No. 106); 2) Plaintiffs are similarly situated; 3) Defendants' systematic failure to maintain accurate time records for the entire class of Plaintiffs; 4) Defendants have implemented common schemes to shave Plaintiffs' time and save millions of dollars in payroll expenses; 5) Plaintiffs washed and ironed their uniforms each week without pay to comply with McDonald's written policies;[2] 6) Plaintiffs worked time without pay to comply with Defendants' directives; and, 7) Defendants ignored their obligations to comply with state and federal wage laws and did nothing to ensure that Plaintiffs were paid for all the time they worked.    Defendants' common schemes violate the wage and overtime provisions of Missouri statues and result in underpayment of wages.  Defendants unjustly benefit from reduced labor costs.

Adjudication of Plaintiffs' claims here in one single trial under Rule 23 is far superior to burdening the Missouri court system with thousands of individual lawsuits to address the same issues, undertake the same discovery, and rely on the same testimony. Class certification conserves judicial resources, eliminates duplicative testimony, and dramatically saves time and cost.  Certification of the proposed class would also provide judicial access to thousands of McDonald's employees who might be reluctant or

---

[2] This claim alone requires certification.  There is no dispute that: all class members wore similar McDonald's uniforms; McDonald's written policy (Ex.14) requires class members to wash and iron these uniforms on their own time; McDonald's enforces its policies with the threat of discipline; McDonald's derives a benefit from class members who perform work washing and ironing their uniforms; and McDonalds refuses to pay class members for this time worked.

intimidated, or simply find the lawsuit too costly to "go it alone." Many employees would otherwise never assert legal rights legislative bodies declared were of such substantial public importance they guaranteed these rights by statute. These benefits, as well as others detailed below, confirm proceeding as a class action is superior to thousands of trials to resolve the common issues presented.

## APPLICABLE LEGAL STANDARDS

I.     THE PURPOSE OF CLASS ACTIONS

"Class actions serve an important function in our system of civil justice."[3] They allow people to redress a wrong collectively that individually, for whatever reason, they would not.

> Equity has long recognized that there is need for a course which would redress wrongs otherwise unremediable because the individual claims involved were too small, or the claimants too widely dispersed. Moreover, early in the development of our civil procedures it became apparent that judicial efficiency demanded the elimination of multiple suits arising from the same facts and questions of law. Hence, the wise and necessary procedure was created by which a few representatives of a class could sue on behalf of others similarly situated, and be granted a judgment that would bind all.[4]

Rule 23 thus was designed to achieve economies of time, effort and expense, and promote uniformity of decisions among persons who are similarly situated to the issues presented.[5] According to the Supreme Court, Fed. R. Civ. P. 23 was designed to accomplish these purposes by "enhancing the efficacy of private actions by permitting citizens to combine their limited resources to achieve a more powerful litigation posture."[6]

---

[3] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).
[4] *Green v. Wolf Corp.*, 406 F.2d 291, 297 (2d Cir. 1968).
[5] *Rules Advisory Committee's Notes to 1966 Amendments to Rule 23*, 39 F.R.D. 69, 102-03 (1966).
[6] *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

Class actions are appropriate in cases, such as this, where employees have relatively small claims when compared to the costs (financially and otherwise) of pursuing their claims, or perhaps harbor concerns about suffering some adverse employment impact, thus making the pursuit of enforcing their legal rights economically impractical or too daunting.  In this case, preliminary calculations indicate each class members' damages range from several hundred to several thousands of dollars.  Although these figures are significant, the costs of individually litigating each claim would be burdensome. Given this, a class action is the superior method of adjudication.

## II.    THE COURT'S CIRCUMSCRIBED ASSESSMENT OF FACTS - MERITS ARE NOT AT ISSUE OR RESOLVED

The sole issue at class certification is whether the requirements of Rule 23 are satisfied.[7]   To be sure, the Court should look beyond the pleadings to make this determination, and give the motion a "rigorous analysis" sufficient to understand what is factually alleged and how the law relates to the substantive allegations before resolving the motion for class certification.[8]

However, as explained in *Lowers v. United States*,[9] when deciding a motion for class certification under Rule 23, the Court must be careful to **not** conclusively weigh evidence or try to resolve the actual merits.[10]  To guard against interfering with the jury's province, "the Court must accept as true the ***substantive*** allegations of the complaint and

---

[7] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (internal quotation marks omitted).

[8] *See, e.g.*, *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006) (quoting *General Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 162 (1982))

[9] *Lowers v. United States*, 2001 WL 200869 (S.D. Iowa May 2, 2001) (Pratt, CJ) ("*Lowers*").

[10] *Lowers* at *2; *Eisen*, 417 U.S. at 177 ("nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.  Indeed, such a procedure contravenes the Rule").

all reasonable inferences that may be drawn therefrom,"[11] and presume that "cognizable claims are stated."[12]

In support of this motion, Plaintiffs submit numerous declarations, documents produced by McDonald's in discovery, and deposition testimony from McDonald's executives. As explained in *Lowers*, *supra*, any dispute over the evidence that McDonald's creates in opposition to this motion is largely irrelevant.[13] The Court's function is to examine and consider the "nature of the evidence" Plaintiffs' present here (or could marshal and present to the jury after full discovery) in conjunction with the substantive allegations and decide "whether the nature of the evidence [when presented to the ultimate fact-finder] would be sufficient, if the plaintiff's general allegations were true, to make out a prima facie case" on behalf of the entire class as to that specific issue or particular claim.[14] The Court's inquiry ends when it finds that Plaintiffs' allegations coupled with the kinds of evidence obtained through discovery indicate class-wide proof can resolve the common issues.[15]

Two courts—quoted below—articulate the scope of the (often misunderstood) inquiry that occurs when deciding a motion for class certification:

> Although both plaintiff and defendant devote considerable effort to argue the merits of their respective cases, the court at this stage has no authority to conduct such preliminary inquiry in order to determine the viability of the class action ... [T]he question is not whether the Plaintiff ... will prevail on the merits, but rather whether the requirements of Rule 23 are met.[16]

---

[11] *Id.* (citing *Lockwood*, 162 F.R.D. at 573; *Jackson v. Rapps*, 132 F.R.D. 226 (W.D. Mo. 1990) (emphasis in original)).

[12] *Zuccarini v. Hoechst (In re Cardizem CD Antitrust Litig.)*, 200 F.R.D. 326, 334 (E.D. Mich. 2001); *see also Bouaphakeo*, 564 F.Supp.2d at 902; 7A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURES §1759, at 99 (2d ed. 1986) ("WRIGHT & MILLER") ("an inquiry into the merits of the claims of the representative or the class is inappropriate when making the decision whether the action should be certified under Rule 23");

[13] *Linder v. Thrifty Oil Co.*, 2 P.3d 27, 34 (Cal. 2000) ("the question of certification [is] essentially a procedural one that does not ask whether an action is legally or factually meritorious").

[14] *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).

[15] *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (citing *Falcon*, 457 U.S. at 159 n.15); *see Bouaphakeo*, 564 F. Supp.2d at 909.

[16] *Osmer v. Aerospace Corp.*, 1982 U.S. Dist. Lexis 15927, at *3-4, 35 Fed. R. Serv. 2d 766 (C.D. Cal. 1982) (citing *Eisen*, 417 U.S. at 178).

[O]nce plaintiffs have demonstrated ... a reasonable basis for crediting the assertion that aggrieved individuals do exist in the broader class they propose, then it is inappropriate for this Court to attempt to resolve material factual disputes on a motion for class certification.[17]

## III.   LIBERAL APPLICATION OF RULE 23 IN FAVOR OF CLASS CERTIFICATION

Rule 23 is liberally construed.[18]  "It is well-settled that: 'When doubt exists concerning certification of the class, the court should err in favor of allowing the case to proceed as a class action.'"[19]  It is the conditional nature of a class certification order that liberalizes Rule 23's application, "for it is always subject to modification should later developments during the course of the trial so require."[20]

## FACTUAL BACKGROUND

## I.   PLAINTIFFS' COMMON CLAIMS

On February 29, 2008, Plaintiffs, individually and on behalf of all similarly situated restaurant employees asserted wage claims under the Missouri minimum wage law, §290.500 *et seq.*, RSMO and common law claims.[21]  Plaintiffs are submitting only their Missouri state-law claims for certification under Rule 23.  These claims are for (i) recoupment of unpaid wages under statute, (ii) breach of contract, and (iii) unjust enrichment and/or quantum meruit.[22]

---

[17] *Selzer v. Board of Educ.*, 112 F.R.D. 176, 178 (S.D.N.Y. 1986).

[18] *Caroline C. v. Johnson*, 174 F.R.D. 452, 459 n.6 (D. Neb. 1996).

[19] *Liles v. American Corrective Counseling Services, Inc.*, 231 F.R.D. 565, 572-73 (S.D. Iowa 2005) (quoting *Williams v. Empire Funding Corp.*, 227 F.R.D. 362, 371 (E.D. Pa. 2005)).  "When there is a question as to whether certification is appropriate, the court should give the benefit of the doubt to approving the class."  *In re Workers' Comp.*, 130 F.R.D. 99, 103 (D. Minn. 1990).

[20] *In re Memorex Sec. Cases*, 61 F.R.D. 88, 93 (N.D. Cal. 1973) (citing *Esplin v. Hirschi*, 402 F.2d 94, 97 (10th Cir. 1968)); Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, §7.24 at 79 (4th ed. 2002) ("NEWBERG") (same); *see* Rule 23(c)(1)(C).

[21] Plaintiffs originally filed their Petition in Missouri State Court.  Defendant McDonald's removed this action to Federal Court and Plaintiffs' Third Amended Complaint (hereinafter "TAC") was filed on November 6, 2009 (See Doc. No. 106).  Additionally, by Stipulation, the Parties intend on filing an amended TAC to cure the misspelling of the name of one of the individual Defendants.

[22] The TAC also asserts individual claims for violation of the Fair Labor Standard Act's overtime and, with respect to Named Plaintiff Mike Doyel, anti-retaliation provisions.  Plaintiffs are not seeking class or collective certification with respect to those individual claims at this time.

The elements of each claim are essentially identical.  All common law claims (*i.e.*, contract, unjust enrichment and/or quantum meruit) have the following elements:

**Breach of Contract**:  Plaintiffs must establish:  (1) existence of a contract (*i.e.*, offer and acceptance, consideration); (2) McDonald's breach; and, (3) damage.[23]

**Unjust Enrichment**:  Plaintiffs must establish:  (1) McDonald's was enriched by receipt of a benefit; (2) at the expense of Plaintiff; and (3) it would be unjust to allow McDonald's to retain the benefit under the circumstances.[24]

**Quantum Meruit**: where this cause of action is considered different or distinct from an unjust enrichment claim, the elements Plaintiffs must establish are: (1) Plaintiffs provided valuable service (2) to McDonald's, and (3) for which McDonalds's has failed to pay reasonable compensation.[25]

In general, the elements of the state statutory wage claims require Plaintiffs to prove that McDonald's failed to pay some earned wages within a specific time-frame, including failing to pay all wages earned within a date certain after employment has ended.[26]

## II.     PLAINTIFFS ARE SIMILARLY SITUATED
### a) All Plaintiffs are Classified as Non-Exempt and Paid a Similar Rate of Pay

There is no dispute that Defendants classified Plaintiffs as non-exempt and paid them an average regular rate of $7.00 - $8.00 per hour. (*See* Doc. No. 1: ¶12; "These individuals have an average tenure with the company of approximately 80 weeks and they earn an average of $7.55 per hour)[27]     McDonald's has acknowledged it has a responsibility to pay all Plaintiffs for all time worked and an overtime premium for time worked in excess of 40 hours per week.[28]     Defendants convey their policies and

---

[23] *McClain v. Papka*, 108 S.W.3d 48, 53 (Mo. Ct. App. 2003).

[24] *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 225-27 (Mo. Ct. App. 2007).

[25] *Olathe Millwork Co. v. Dulin*, 189 S.W.3d 199, 206 (Mo. Ct. App. 2006).

[26] Missouri Statute §§ 290.080, 290.110.

[27] Consistent with its goals of standardized operations, McDonald's strives to pays it hourly paid employees a similar rate of pay.    To help accomplish this goal, McDonald's tracks Plaintiffs' compensation to calculate an average hourly rate.  During the class period, the average hourly pay for all class members was $7.00 to $8.00.

[28]  [Ex. 16 - Dep. Orf at 196-197 ("Q.  Do you know if new hires are paid for the time that they have to go through orientation? A. Yes, they are paid.  Q. How do you know that? A. Because we pay people for all hours worked, and if the orientation is included as work, which it is, they are to be clocked on and clocked off...."]; *see also* [Ex. 16 - Dep. Store Manager Deana Danner at 253-254 ("Q. Do you know if it's the policy of McDonald's Corporation to have no employee work off the clock and have all employees paid for all time worked?  Is that a McDonald's policy

obligations to pay employees to restaurant employees at orientation after they are hired.[29] Whether Defendants violated its statutory and common law obligations by failing to pay Plaintiffs for all time worked should be decided as a class.

**b) Defendants Use the Same Management Structure and Objectives to Enforce its Policies and Supervise Class Members**

As any one of over 60 billion customers know, McDonald's strives for uniform operations and wants customers in each of its restaurants to enjoy the same Big Mac, french-fries and overall dining experience. [30] To help them do so, McDonald's Corporation organizes its field operations as follows: hourly paid crew members who report to hourly paid restaurant managers who report to salaried restaurant managers who report to Area Supervisors (In this case there are approximately six Area Supervisors who oversee a "Patch" of approximately six restaurants each) who report to Profit Center Managers (During the class period there has been a St. Louis Profit Center Manager [Rick Orf] and a Kansas City Profit Center Manager [Peter Green]).  McDonald's uses its chain of command to issue uniform policies, procedures and objectives.  For example, during monthly Profit Center meetings, Profit Center Managers communicate company wide directives on wage and hour issues including:

- Overtime objectives directing area supervisors and salaried managers to eliminate overtime and not to exceed more than 10 hours of overtime per store, per month;[31]

---

or just your policy? A. I believe that's the policy for me and my McDonald's and every McDonald's I've ever worked at.  I can speak for all those. Right?")].

[29] McDonald's regularly informs store employees of the company's policy on paying for all time worked. [Ex. 17 -- McDoyel 4077 -- description]; *see also* [Ex. 17 McDoyel 30681-30682 -- description]

[30] [Ex. 7 - Dep. Director Store Opps. Rick Orf at 29 ln:11-19 "Q.Sure. There's going to be situations that vary in one store, for example, from day to day.  I mean, that's life.  My question is more about what are McDonald's policies and desired practices.  And from McDonald's perspective or from your perspective as the profit center manager, you want there to be consistency; is that correct? A. Correct").]; *see also see also* [(Ex. 8 Dep. Area Supervisor Shannon Plaggenburg at 38, lns. 4-12 ("Q. Okay. And was there a – was there a goal that McDonald's wanted its stores to follow with regard to TPCH? A. Eight.   Q. Eight tickets per crew hour?  A. Yes")]; *see also* [*id* at 68 lns: 6-17 ("Q. All right. I know we're kind of bouncing around here. Back to your performance criteria.  Isn't it true that stores are directed to have fifty hourly paid employees or less per store?  Isn't that one of McDonald's directives? A. When you say, "directive," I don't understand what you are saying.  Q. Well, does McDonald's have any policies, goals, objectives that state that stores are supposed to have fifty hourly paid employees or less?  A. Goals of fifty, yes.")]; *see also* [*id* at 70 lns:17-25 ("Q. So the goal is that each store that you supervise that's in your patch should have zero to ten hours of overtime per store per month? A. That their goal, correct.  A. Okay. And are stores ranked on that?  A. Are they – I mean, they are.  Like if I send out a report or something, yes.")]

[31] Ex.26, Pennington Dep at Page 127-128.

- TPCH guidelines directing area supervisors and store managers to increase the number of transactions per crew hour to 8 or more;[32] and,

- Average wage guidelines directing area supervisors and store managers to achieve an average wage of $7.00-$8.00 per hour for crew members.[33]

While there may be slight variations in the implementation or supervision of these directives, the general guidelines are the same for all of Defendants' restaurants.[34]

### c) Plaintiffs Are Subject to the Same Policies and Procedures

Pursuant to Defendants' policies, all crew members are required to complete McDonald's standardized orientation shortly after being hired.[35] During orientation, crew members are provided with standardized policies and practices including McDonald's timekeeping practices; pay policies and dress code, amongst others.[36]

Pursuant to McDonald's timekeeping practices all class members are required to record their time worked on McDonald's cash registers (also known as the Point of Sale System or "POS"). Specifically, class members are to record work start times, times when they punch out for a break, times when they return to work from a break and times when they stop working. These practices are the same for all class members regardless of location.[37]

McDonald's written pay policies provide that class members are to be paid for all time worked. They also provide that class members are paid an hourly rate of pay,

---

[32] Ex.24, Orf Deposition at page 126.

[33] Notably, Area Supervisors and store managers are ranked on these three criteria.

[34] McDonald's also has one Human Resources Department which, in Missouri, is led by Kenneth Sanders and Robert Pennington. Mr. Pennington testified that both he and Mr. Sanders are ultimately responsible for McDonald's wage and hour compliance.
[35] Ex.26. Pennington Dep at Page 120.

[36] Ex.26, Pennington Dep at Page 124. [Ex-9 - McDoyel 0001-0007 (Employee Job Descriptions)]; *see also* [Ex 9 - McDoyel 03364 (Crew Member Orientation Materials)]; *see also* [Ex. 9 - McDoyel 3554-3611 (Crew Member Orientation Materials)]; *see also* [Ex. 9 - McDoyel 3780-3833 (Crew Member Orientation Materials)].
[37] Ex.26, Pennington Dep at Pages 122-123.

9

overtime for hours worked over 40 per week and that they will be paid every two weeks. This written policy is the same for all class members regardless of location.[38]

Defendants' dress code requires class members to wear a McDonald's uniform and to wash and press that uniform each week.[39]  Defendants require newly hired crew members to sign off on the dress code policy.[40]  Defendants also post bulletins in its crew rooms reminding class members to maintain their uniforms by washing and ironing their uniforms each week.[41]  Regardless of location, all Plaintiffs are required to comply with the same orientation, timekeeping practices, pay policies and dress code.

### d) Plaintiffs Share the Same Duties

By definition, the class members in this case are the hourly paid McDonald's employees who prepare food, wait on customers, ring up sales and clean the restaurant.[42] Regardless location, class members in Defendants' restaurants perform the exact same duties pursuant to McDonald's written job requirements.

### e) Plaintiffs Use the Exact Same Timekeeping System and Practices

Defendants use their In Store Processor or "ISP" as a centralized computer to process class member schedules and time worked.  McDonald's maintains its Point of Sale "POS" system on its ISP computer.  McDonald's however, only maintains electronic records of Plaintiffs' time punches for a period of 70 days.[43]  McDonald's ISP and POS are largely automated and help McDonald's schedule employees, track sales and monitor performance.  As part of this automated process, the POS system shuts down each night for a period of at least 15-20 minutes.[44]  During this shut down period, POS functions

---

[38]Ex.26, Pennington Dep at Page 85.

[39]Ex.26, Pennington Dep at Page 175.  During the class period this uniform consisted of a McDonald's button down shirt, dress pants, a visor or hat, nametag and tie.

[40] Ex.27, "McDonald's Employee Appearance Standards" MCDOYEL 000133.

[41] Ex 28, "Be Well Dressed Posters" MCDOYEL 104829 and 109492;  Also See Ex. Pennington Dep at Page 185.

[42] Ex: 26, Pennington Dep at Pages 119-120.

[43]  Ex.15, Orf deposition at pages 277-278. After 70 days, McDonald's electronic time records are purged and permanently rendered unavailable.

[44] Ex 1. Orf deposition at pages 76-77.

such as ringing up sales and punching in or out for time keeping purposes are disabled.[45] Documents produced and deposition testimony elicited from McDonald's executives show that regardless of where a class member works he or she is subject to the same scheduling and time-keeping protocols that corporate headquarters impose company-wide.[46]  This common evidence can be used to show Defendants' policies and practices result in a widespread failure to maintain accurate time records and that employees across the company are "similarly situated" for purposes of class certification.

## III.   DEFENDANTS FAILED TO MAINTAIN ACCURATE TIME RECORDS

As mentioned above, Defendants keep electronic time records for a period of 70 days – not three years as required by Missouri wage laws and the FLSA.[47]  The only other time records maintained by Defendants are hard copy reports known as time punch edit reports.[48] Time punch edits are printed out each day for each restaurant regardless of location.  However, what happens to them thereafter is unclear.  It is unclear because Defendants have refused to do anything to verify whether or not these records have been kept for each day worked by each class member during the class period.[49]  What is clear is that Defendants lacked any company-wide safeguards, such as maintaining electronic copies of these reports, to ensure that they were maintained as required by RSMO.[50]

McDonald's daily POS shut down is another systematic flaw in its time keeping practices.  As mentioned above, the POS (McDonald's timekeeping system) shuts down

---

[45]  Ex 1, Orf deposition at page 90.

[46] [Ex. 18 - McDonald's Responses to Plaintiffs' First Set of Interrogatories #3 "As a general matter, employee work schedules are created on a weekly basis by an individual in the store who is in charge of scheduling.  This person may be a restaurant manager, as is the case the McDonald's of Oakville restaurant, or an administrative assistant, as is presently the case at the Hazelwood restaurant.  Schedules are generated by the restaurant's ISP computer system, based upon information in the system concerning employee availability and business trends.  Once generated, the individual in charge of scheduling may edit the schedule based on employee time-off requests or other relevant information.]

[47] § 290.520 RSMo. (2008)

[48] Ex. 26, Pennington Deposition at Pages 146-148.

[49] Id.

[50]  Ex. 26, Pennington Dep at Pages 114-118.

each night for a period of 15-30 minutes.  This shut down time prevents employees from ringing up sales and punching in or out for timekeeping purposes.[51]  Effectively, this 15-30 minute window is a black hole in time which Defendants count as an automatic, unpaid break for its overnight employees.

Defendants' ignorance of their legal responsibilities was highlighted by the testimony of its own executives.  Rick Orf, McDonald's Profit Center Manager in charge of all St. Louis area McDonald's, betrayed a complete and fundamental misunderstanding of the requirements of an employer in making sure that employees properly record their time and receive proper pay when he testified as follows:

Q: Okay. Can you answer whether or not you think that McDonald's and the employee bear equal responsibility to make sure that employees are paid properly?

A: I – no, I can't.  I don't know that it's equal.  I – I just know that  with the amount of employees and every employee working different hours, I don't know how you would hold accountability for McDonald's to know how many hours every person worked.  I don't know that that's realistic.

Q:  Okay. Do you have an opinion on who is more responsible?  The employee or McDonald's?

A:  No, I really don't have an opinion on that.[52]

Similarly, Robert Pennington, McDonald's Human Resource Specialist for Missouri, testified that while he was the person most responsible to ensure compliance with wage and hour policies,[53] he did not:

- Receive any formal education on RSMO;[54]

- Know what the "FLSA" stood for;[55]

---

[51]  Ex. 1, Orf deposition at page 90.

[52]  Ex. 1 - Dep. Profit Center Manager Rick Orf at 49, lns: 5-22.

[53]  Ex. 26 - Dep. Pennington at 56, lns: 6-25.

[54]  Ex. 26 Pennington Dep at Pages 33-34; 37-38.

[55]  Ex. 26 - Dep. Pennington at 38.

- Know what Missouri law says about keeping employee time records or for how long they must be kept;[56]

Moreover, neither of these witnesses could answer whether or not McDonald's maintained time records for the three year period required by law.[57]  There is no excuse for Defendants' failure to maintain accurate time records and the testimony from McDonald's executives responsible for wage and hour compliance demonstrates Defendants' utter denial or willful defiance of an employer's most fundamental obligation to employees:  to accurately document their time and pay them for all work performed.  Missouri law prohibits McDonalds's from *ever* permitting employees to donate time and labor to McDonald's, and forbids McDonald's from shifting the employer's statutory responsibility to ensure all work by employees is accurately recorded onto its employees.[58]  McDonald's—the employer, not its employees are specifically charged with ensuring employees are paid for all work, accurately documenting that time and preserving the proper records.  Whether or not Defendants failed to maintain accurate time records is certifiable and should be determined on a class wide basis.[59]

---

[56] Ex. 26 - Dep. Pennington at Pages 69-70.

[57] Ex. 26, Pennington Dep at Page 70.

[58] Missouri wage law, like the FLSA, imposes the duty to accurately record all time worked squarely on the employer.  "[I]t is the employer who has the duty under 11(c) of the [FLSA] to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed.  Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see also Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (same); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) ("The obligation is the employer's and it is absolute.  He cannot discharge it by attempting to transfer his statutory burdens of accurate record keeping, … and of appropriate payment, to the employee.");

[59] "[T]he reason an employee continues to work beyond his shift is immaterial."  *Reich v. Department of Conservation & Natural Resources*, 28 F.3d 1076, 1082 (11th Cir. 1994).  "In other words, once it is established that an employer has knowledge of a worker's overtime activities and that those activities constitute work … liability does not turn on whether the employee agreed to work overtime voluntarily or under duress."  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 290 (2d Cir. 2008); *see also Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997)**.**

**IV.    DEFENDANTS SHAVED PLAINTIFFS TIME TO REDUCE THEIR PAY AND SAVE DEFENDANTS MILLIONS IN PAYROLL EXPENSES**

Like most business, one of Defendants' key business objectives is to increase profits.  A primary way Defendants increase their profits is by controlling labor costs. Defendants control labor costs by implementing company wide objectives such as the 0-10 overtime hours per store per month guidelines.  McDonald's executives and HR employees have also performed analysis detailing the impact of shaving one or two hours of employee pay per week on McDonald's bottom line.  A February 24, 2009 memo from McDonald's Regional Leadership Committee states:

What We Need To Do: Implement zero overtime policy within your restaurants. Find a "hidden 5.7 hours by monitoring clock in/clock out time to avoid losing $15k a year![60]

Moreover, a May 14, 2008 email and attachment from Robert Pennington shows McDonald's Area Supervisor, Sue McAllistar how she can save between $11,610 and $17,172 per store per year by cutting crew members' pay by 1-2 hours per week.[61]    The median between the two numbers is $14,391 which is consistent with the RLC memo about saving $15k per store per year.    Moreover the email and spreadsheet sent by Robert Pennington shows that the Missouri region could save between $1,393,217.28 and $2,060,647.68 if each store cut between 1-2 hours of employee pay per week.[62]

Defendants empower their salaried managers to make edits to employee time punches.[63]  These edits are reflected on time punch edit reports as described above and all class members have had their times edited at one time or another.   Under this system, the only reason for a legitimate edit is when an employee forgets to make a punch.  When an employee forgets to make a punch his or her time is "unbalanced" and an edit is needed to balance out the employee's time.

---

[60] Ex.29,  Documents bates stamped MCDOYEL 107359-107361.

[61] Ex.30, Documents bates stamped MCDOYEL 104876-104883.

[62] One reason, McDonald's executives and HR employees want to reduce payroll costs is because it increases the possibility that they will receive their bonus.

[63] Ex. 26, Pennington Dep at Pages 156-166.

14

However, when an employee's punches are balanced, there is no reason to make any edits. Nonetheless, Defendants disclosed an expert report showing **10.15% of all balanced shifts were edited![64]** Alarmingly the vast majority of these edits resulted in time being shaved from class members' records. Defendants' report also identified several common trends. First, 3.7% of all time were edits where Defendants inserted breaks of 20 minutes or more that simply were not taken or recorded.[65] Second, 2% of all time was simply shaved resulting in additional pay violations. Third, .95% of all time resulted in breaks of 20 minutes or less being extended to 20 minutes or more to avoid state and federal wage requirements that the break be paid.

All four named Plaintiffs unequivocally aver that McDonald's automatically deducted break times even though they worked through such "break periods."[66] Dan Pryor, who worked for the Defendants for five years and was ultimately promoted to a salaried store manager stated that: "I worked the overnight crew on approximately 30-40 different occasions where 30 minutes was automatically deducted from my time worked even though I did not take a break. I also witnessed this same occurrence for many other

---

[64] Ex.34, Anderson report at page 5.

[65] Under state and federal law, breaks of 20 minutes or less must be compensated. Breaks of 20 minutes or more can be unpaid. Accordingly, Defendants added break times of 20 minutes or more to cut employee pay. This type of edit would also explain some, but not all, of the improper breaks that were being made for employees working the overnight shift.

[66] [Ex.3 Named Plaintiff Dan Pryor Declaration at ¶¶ 17, 19-20]; *see also* [Ex. 4, Named Plaintiff Mike Doyel Declaration at ¶¶ 6, 8]; *see also* [Ex. 6_Named Plaintiff Dep Pryor at 31-32 ("Q. Okay. But how do you know that your hours were changed in the system so that you weren't paid for all hours that you recorded, because I think you just – okay. Were there occasions where Dena Danner – you believe Dena Danner had other managers change your hours so that you were not paid for all hours that you recorded? A. Yes. Q. Why do you believe that? A. Because I would work 40 hours, and the I would work an overnight shift. Then I'd be docked for a break that I never took, which would have given me more overtime. Q. How often did that occur? A. Whenever I worked an overnight shift. ")];*see also* [Ex. 5_Dep Prodes at 48-9 ("A. Sometimes, yes; sometimes, no. I was made to punch out, sometimes at 6:00 a.m., and I had – I was made to work off the clock. Q. So you would punch out and keep working? A. Yes. Made to work. Q. And who would make you work? A. The orders came for me during all my times from Bonita Carr, I believe her last name is, but Bonita has been there, I don't know, 25, 30 years. Q. And what was Bonita Carr's position? A. She was like the lead swing shift manager, I believe. Q. And with Ms. Carr, when you said the orders came from, how would she deliver you this message that you needed to keep working? A. Well, I can only give specific examples. She would say, "Punch out," and we did. And she's like, "Your work isn't finished." For example, I was made to clean the ice cream shake machine one time. It took me about an hour and a half. I had to do it and was not paid for it. I had to roll burritos, I'd say tow or three times. She said there wasn't enough burritos rolled. So I was made to clock out, and I continued to roll them, sometimes for one to tow hours. I was made to get salt for the parking lot off the clock. I went down the street to the Ace Hardware store in my car, my own time, and was not paid for it. And then was made to go back again, because they needed more salt. Was made to make salads that weren't enough made or yogurt parfaits, things like that.")]

crew members including Alex Prodes, Michael Doyel and Amy Doyel who were deprived of 30 minutes of time worked even though they did not take a break."[67]   Pryor adds:

> "I was not properly paid for all of the time I worked.  In fact, during November, 2005 or 2006 I complained to Deena Danner that I was not being paid for all time worked, including the 30 minute period during the overnight shift.  Specifically, I asked Deena if I had to go to the Department of Labor to get paid.  Shortly thereafter, I was paid a special check to compensate me for some of the unpaid time I worked."[68]

Pryor is extremely well-qualified to speak to McDonald's policies and practices with respect to operations.  To be promoted to the salaried assistant manager position, Pryor went through rigorous training and had access to documents and emails that spelled out McDonald's approach to wages and overtime.   Pryor states:

> As a second assistant manager, I was aware that McDonald's discouraged overtime compensation.  Specifically, I read emails from Area Supervisors, Sue McAllistar and Shannon Plaggennburg and the St. Louis Profit Center Director, Rick Orf demanding explanations from restaurant managers any time the restaurant had more than ten hours of overtime in any given week.  Moreover, McDonald's provided its salaried managers with a bonus that was largely based on reduced payroll and overtime compensation.  In other words, if a manager wanted a bonus, they should keep payroll and overtime pay down.  Further, as a form of discipline, restaurant managers who had overtime in their restaurants were ranked at the bottom on an overtime report that was distributed to other restaurants.[69]

Defendants' own documents along with its time punch edit reports, expert analysis and testimony confirms that Defendants had the incentive save millions of dollars in payroll to shave time, provided uniform tools and methods for its management to shave time and actually shaved over 7% of all time actually worked by Plaintiffs.  By looking at Defendants' time punch edit reports on a class wide basis we should be able to

---

[67] [Ex. 3 Named Plaintiff Dan Pryor Declaration at ¶17];

[68] [Ex. 3Pryor Dec at ¶21]

[69] *Id* at ¶18.

16

identify improper and unexplainable time edits for all plaintiffs and calculate a proper measure of damages.

**a)      Plaintiffs Washed And Ironed Their Uniforms Without Pay To Comply With McDonald's Written Policies**

As set forth above, Defendants' dress code required class members to wear a McDonald's uniform and to wash and iron that uniform each week.   Defendants' executive of HR, Robert Pennington, testified that McDonald's derived a benefit from Plaintiffs' compliance with McDonald's dress code.[70]   Nonetheless, Mr. Pennington was unsure whether or not McDonald's was required to pay Plaintiffs for that time worked and had done nothing to look into that issue.   Most significantly, *Defendants failed to provide any Plaintiffs with a way to record time worked cleaning and ironing their uniforms and did not pay them for this time worked.*[71]   Specifically, Defendants failed to provide time sheets or any other method for class members to punch in or record time spent cleaning and ironing their uniforms.   Plaintiffs' proposed class is certifiable on this basis alone.

Nonetheless, McDonald's enforced its uniform policy by disciplining class members who failed to comply.[72] Moreover, Defendants' management confirmed that Plaintiffs who arrived at work with a wrinkled uniform were required to iron their uniform on a McDonald's ironing board with out pay and before such employees could punch in and start work.[73]

At their depositions, Plaintiffs confirmed that they washed and ironed their uniforms each week as required by Defendants' written policies.   Plaintiffs also testified

---

[70] Ex.26, Pennington Dep at Pages 82-83; 185-186 "Q: And do you agree that McDonald's derives a benefit from having its employees come to work in a clean, pressed and neat uniform?   A: In my opinion, as a company, you know, again, the better looking employees you have, the better the opportunity for the company to be able to profit."

[71] Ex. 26,  Pennington Dep at Pages 167-174.

[72] Ex. 26, Pennington Dep at Pages 173-174; 179.

[73] Ex. 24, Orf Deposition at Pages 204-205; Ex. Amy Doyel Deposition at pages 211-212.

that they performed this additional work without compensation.[74]   There is no doubt that Defendants had a standardized uniform and dress code policy for all its employees. Whether Plaintiffs performed unpaid work complying with Defendants' dress code is certifiable and should be determined on a class-wide basis.

## VI.   PLAINTIFFS PERFORMED OTHER WORK WITHOUT PAY

As mentioned above, Defendants' timekeeping practices are deficient because they fail to provide Plaintiffs with the ability to record time worked away from the stores. In addition to the time worked by Plaintiffs cleaning and pressing their uniforms, Plaintiffs performed additional work away from the store and off the clock.   Named Plaintiffs' testimony, as well as Defendants' testimony confirmed that Plaintiffs regularly performed work, such as making bank deposits and picking up product from other restaurants (i.e. hamburger buns, cheese, etc) without pay and without any practice for recording such time worked.[75]   Because Defendants' timekeeping system only permits employees to punch in at the store, whether or not Plaintiffs performed additional unpaid work off the clock is certifiable and should be determined on a class wide basis.

## VII.   DEFENDANTS FAILED TO ENSURE THAT PLAINTIFFS WERE PAID FOR ALL TIME WORKED

As noted, the parties in this case agreed to conduct a "sampling" of four restaurants for purposes of class certification.   Alarmingly, this sample revealed wage violations reported during the class period at every restaurant in the sample. ***Extrapolating this number out to the other corporate restaurants in this case translates into a staggering 100% reported failure rate by McDonald's corporate restaurants in Missouri to comply with state wage laws.***

## McDonald's Missouri Pay-Related Complaints[76]

---

[74] See Declarations, attached as exhibits 3, 4.

[75]  Ex. 26, Pennington dep at Pages 161-165.

[76] See Ex. 31, Missouri Pay Related Complaints MCDOYEL 005297 - 5309.   McDonald's violations of labor laws preceding and throughout the class period confirm Plaintiffs possess common proof of

| **Employee** | **Store #** | **MO Wage Violations** | **Date** | **Bates Numbers** |
|---|---|---|---|---|
| Liliana C. Scott | 10476 | Unpaid break time | 3/10/2006 | MCDDOYEL 005298 |
| Angela Covington | 10476 | Unpaid hours | 11/26/2008 | MCDDOYEL 005299-005300 |
| Orlando O. Oates | 25248 | Unpaid break time | 12/7/2007 | MCDDOYEL 005303 |
| Louis Radazo | 17931 | Unpaid regular and overtime hours | 3/21/2007 | MCDDOYEL 005307 |

Despite this four year history of employees reporting wage violations, McDonald's refuses to conduct a meaningful investigation of its wage practices in Missouri. As explained above, McDonald's policies and practices regarding wages, payment of wages, and its record-keeping are standardized across the company and uniform in application to all non-exempt restaurant employees. Consequently, when McDonald's policies and practices result in a violation of labor laws, it stands to reason that those same practices could lead to a second violation. But when these same practices result in 10, 20, 100 or more instances of unpaid wages, logic dictates that the policies and practices are to blame.

Federal and state statutes also require McDonald's to investigate its actual in-store practices, and then police these practices to ensure employees are properly compensated for all work performed. Accordingly, McDonald's "knowledge" is determined by asking what McDonald's would have discovered upon conducting a reasonable company-wide investigation into its actual restaurant practices.[77]

As was the case in *Brennan v. General Motors Acceptance Corp.*,[78] here common evidence can show that had McDonald's exercised reasonable diligence or simply

---

McDonald's knowledge and willfulness. *See, e.g.*, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir.1991) ("It is undisputed that [Elliott Travel] had actual notice of the requirements of the FLSA by virtue of earlier violations.... Under these undisputed circumstances, defendants' violation of the FLSA satisfies the 'willfulness' standard of *Richland Shoe*.");

[77] *See supra.*

[78] 482 F.2d 825, 827-28 (5th Cir. 1973).

19

conducted a rudimentary investigation the company would have discovered that the Named Plaintiffs and declarants were working "off-the-clock," just as the Missouri Pay Related complaints demonstrated.

Deposition testimony reveals McDonald's failure to conduct due diligence or a "reasonable investigation." Although McDonald's states that Store Managers and supervisors "***are responsible for making sure that the operations…are aligned***"[79] and thus make certain that employees are paid for work performed, McDonald's policing and enforcement of its policy is non-existent. Instead of enforcement and policing conduct or compelling compliance, what McDonald's does is remind Store Managers and Supervisors of the company's obligations along with providing quarterly training to management. The aforementioned Rick Orf, Profit Center Manager for the entire state of Missouri, testified that his policy and practice on visiting restaurants was "a quick walk through the back of the restaurant."[80]

Employers, not employees, are responsible for ensuring time sheets are an accurate accounting of all work performed and that employees are paid properly. Much, much more is required from McDonald's be it under labor laws or its own fundamental business principles, than the dissemination of information, education or training programs and creating superficially well-intentioned policies.

---

[79] [Ex. 24 - Dep. Orf at 104-105 ("Q. Okay. Could you give us like a day in the life as the operations manager for McDonald's here in St. Louis? A. Every day is different. You know, depending on what's on the calendar of events that's happening. I don't spend a lot of time in the restaurants. I do make appearances, I don't stay long. With thirty-one restaurants, I might get to a restaurant for two or three hours once every two months. So, you know, and primarily it's – it's just a quick walk-through the back of the house. It's really to evaluate customer service, quality of the food, and the cleanliness of the restaurant. It's not to get into the nitty-gritty of the paperwork. You know, it's to compliment them on the things that they're doing right, and point out any, I guess, blatant opportunities that they would have. And then primarily the area of quality, service, and cleanliness. You know, it's – the supervisors are responsible for making sure that the operations and the sales and all the other Plan to Win areas are aligned.")]. As discussed above, although McDonald's does have an established protocol to try to ensure Employees report all time worked, McDonald's has **no** protocol for management to police and ensure Store Managers have accurately recorded hours actually worked.

[80] *Id.*

## LEGAL ARGUMENT

In light of the well-established record of common evidence and facts, this case easily satisfies the requirements of Rule 23(a) and 23(b).

## I.     THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED

Under Rule 23(a) a class action may be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

As evidenced by Plaintiffs' substantive allegations, McDonald's deposition testimony, witness declarations, documents obtained via discovery, and as further demonstrated by the following discussion, this case meets all four requirements.

### a) Rule 23(a)(1):  The Class Is So Numerous Joinder Is Impracticable

The numerosity requirement under Rule 23(a)(1) requires that the class be large enough to make joinder of all putative class members "impracticable."[81]  The term "impracticable" does mean impossibility; it refers only to the difficulty or inconvenience of joining all class members in a single action.[82]  "Various factors are relevant in analyzing 'numerosity,' including: the number of individuals in the proposed class, the nature of the action, the value of the individual claims, the inconvenience of trying each case individually, and 'any other factor relevant to the practicability of joining all the putative class members.'"[83]  While no absolute number satisfies numerosity,[84] the oft-cited benchmark in a class is presumptively appropriate if it exceeds forty (40) persons.[85]

The precise number of class members in this case is unknown.  However, at the time it filed its motion to remove, McDonald's confirmed it employed 2,021 hourly

---

[81] *Lowers* at *3.
[82] *Lockwood Motors Inc. v. General Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995).
[83] *Lowers* at *3 (quoting *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982)).
[84] *Belles v. Schwiker*, 720 F.2d 509, 515 (8th Cir. 1983).
[85] *Lowers* at *11; *see, e.g.*, *Mendez v. Radec Corp.*, 232 F.R.D. 78, 91 (W.D.N.Y. 2005) (more than 70 members).

employees in the State of Missouri.  (*See* Doc. No. 1)  Plaintiffs believe the actual number of class members exceeds 4,000 plaintiffs.  Assuming there have been approximately 40 restaurants in operation during the class period and each restaurant employed approximately 100 employees, the class likely meets or exceeds 4,000 individuals employed by McDonald's.[86]  The class is clearly too numerous to make joinder practicable.

### b) Rule 23(a)(2): There Are Questions of Law or Fact Common to the Class

The second requirement under Rule 23(a) is that there is at least one common question of law or fact.[87]  It is not necessary to demonstrate that every question of law or fact is common to each member.[88]

> Instead, Rule 23(a)(2) requires only that the course of conduct giving rise to a cause of action affects all class members, and that at least one of the elements of that cause of action is shared by all class members." [89]

Under Rule 23(a)(2), "it is enough that they share common objectives and legal or factual positions."[90]  Commonality is always satisfied "when the legal question linking the class members is substantially related to the resolution of the litigation."[91]  "Thus, factual

---

[86] *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.")

[87] *Belbis*, *supra* at *14 ("some factual variations among the class members does not defeat commonality, so long as there is at least one question of law or fact common to the class"); NEWBERG §3:10 at 272-74 (same).

[88] *Lowers* at *4 (citing *Paxton*, 688 F.2d at 561).

[89] *Lockwood*, 162 F.R.D. at 575 (citing *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993)); *see also Baby Neal v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1994).  Commonality may be found even where the individual class members are not "identically situated" so long as the issues linking the class members are "substantially related to resolution of the litigation.  *Paxton*, 688 F.2d at 561 (citation omitted).

[90] *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (internal quotation omitted).  Common questions are said to exist, for example, when there is a "common nucleus of operative facts," *Egge v. Healthspan Services Co.*, 208 F.R.D. 265, 269 (D. Minn. 2002); or such as where the class share the same job title or duties in a wage and hour case.

[91] *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir.1995) (quotations omitted).

differences are not fatal to maintenance of the class action if common questions of law exist."[92]

Commonality may be found in classes asserting wage claims under state law, even if the named representatives or other class members are employed by the defendant in different capacities or at different restaurants.[93]   Here, Plaintiffs and putative class members hold or held the position of McDonald's hourly paid employee and assert claims based on McDonald's uniform job requirements and duties, uniform application of its policies, and the company's policies and practices that deprived them of their timely payment of wages earned for work performed and/or failure to reimburse their expenses or costs expended on behalf of the company and at its request.   Plaintiffs' statutory and common law claims present countless common questions of law and fact, including but not limited to:

     a)     Whether Defendants failed to keep accurate records of actual time worked by their hourly employees;

     b)     Whether Defendants had a policy to automatically deduct break periods for breaks taken, including deductions for the time when Defendants' computers shut down and re-boot each day;

     c)     Whether the Defendants improperly manipulated Plaintiffs' hours worked;

     d)     Whether Plaintiffs wore McDonald's uniforms;

     e)     Whether Plaintiffs complied with Defendants' dress code policy by washing and ironing their uniforms each week without pay;

     f)     Whether the Defendants conducted an analysis of their time keeping system, practices and procedures before failing to pay Plaintiffs regular and/or overtime wages earned;

---

[92] *Bouaphakeo*, 564 F. Supp.2d at 903 (quoting *Robinson v. Sears, Roebuck & Co.,* 111 F. Supp.2d 1101, 1120 (E.D. Ark. 2000)); *see* NEWBERG §3:10 at 271.

[93] *Torres v. Gristede's Operating Corp.*, 2006 WL 2819730, at *14 (S.D.N.Y. Sept. 29, 2006) ("They have submitted evidence that Defendant suffered, encouraged, and required them to work beyond their shifts. Plaintiffs share a common factual claim that they were not paid for their additional work.  They also share a common legal claim that Defendant's failure to pay them for overtime hours is a violation of [State] minimum wage and overtime regulations.");

g)      Whether Plaintiffs performed unpaid work "off-the-clock" for Defendants' benefit;

h)      Whether Defendants engaged in a pattern, practice or policy encouraging class members to work "off the clock" and failing to pay class members for such hours worked "off-the-clock";

i)      Whether the Defendants failed to pay Plaintiffs and class members all regular hourly wages earned;

j)      Whether Defendants failed to pay Plaintiffs and class members all overtime compensation due to them;

k)      Whether Defendants intentionally and pursuant to a standard policy or practice made misrepresentations or omissions of material fact by altering time, attendance and payroll records to understate class members' actual earnings;

l)      Whether Defendants failed to compensate class members for time they spent working through their break and meal periods;

m)      Whether Defendants failed to compensate Plaintiffs and class members for time they spent maintaining and laundering their uniforms;

n)      Whether Defendants' practice violates the overtime provisions of the RSMO, §290.500 *et seq.*;

o)      Whether the Defendants' failure to pay regular wages and overtime wages was willful;

p)      Whether Plaintiffs and the class have suffered damages and the proper measure of those damages;

q)      Whether Plaintiffs and others similarly situated are entitled to damages pursuant to quantum meruit and unjust enrichment

The commonality requirement is easily satisfied.

### c) Rule 23(a)(3):  The Claims Or Defenses Of The Representative Plaintiffs Are Typical Of The Claims Or Defenses Of Class Members

"Like commonality, the test for typicality is not demanding."[94]  In *Lowers*, the court explained: "The burden of demonstrating typicality [the third requirement under

---

[94] *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999).

Rule 23(a)] is fairly easily met so long as other class members have claims similar to the named plaintiff."[95]  Put differently, typicality under Rule 23(a)(3) suggests "there are other members of the class who have the same or *similar* grievances as the plaintiff."[96] Accordingly, typicality is satisfied "if the claims of all members arise from a single event or share the same legal theory."[97]

In *General Telephone Co. v. EEOC*, the Supreme Court remarked, "[t]he typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims."[98]  The rationale being that a plaintiff with typical claims will pursue his or her own self-interest in the litigation, and in so doing, equally advance the interests of the absent class members.[99]  Naturally, in adjudicating such a plaintiff's claim, the court would of necessity also be deciding the common questions of the defendant's wrongdoing as to the class generally.  In this way, typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff."[100]  Thus, the test of typicality does not refer to the "relief sought" or "the specific facts from which [the claim] arose," but instead refers to the "nature of the claim" asserted by the class representative.[101]

In cases involving claims for violations of state wage laws, typicality generally is satisfied because the named plaintiffs and absent class members have been injured by the same course of unlawful conduct.[102]  Here, all four named Plaintiffs, like all other members of the class, were employed as non-exempt, hourly employees in Missouri

---

[95] *Lowers* at *5 (quoting *DeBoer*, 64 F.3d at 1174).

[96] *Lowers* at *4 (citing *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)) (emphasis original).

[97] *Lowers* at *5 (citing *Paxton*, 688 F.2d at 561-62); *see also Alpern v. Utilicorp United, Inc.*, 84 F. 3d 1525, 1540 (8th Cir. 1996) (factual differences acceptable where claims arise from same practice or course of conduct and based on same legal theory); *Lowers*, at *15-16 (same) (citing *DeBoer*, 64 F.3d at 1174-75 & Newberg on Class Actions § 3.15 (3d ed. 1992)).

[98] *General Tele. Co. v. EEOC*, 446 U. S. 318, 330 (1980).

[99] Newberg §3:13 at 325.

[100] *Donaldson*, 554 F.2d at 830.

[101] *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986).

[102] *Wang*, 231 F.R.D. at 608 (typicality requirement satisfied where named plaintiffs alleged they were subject to the same policies that systematically deprived other class members of compensation);

during the class period, and all consistently were denied wages, including overtime.[103] The named Plaintiffs and all other putative class members assert claims based on the identical theories that they were denied wages, including overtime, for unpaid "off-the-clock" work.[104]   These claims—which arise from uniform policies and practices—satisfy typicality.

**d) Rule 23(a)(4):  The Representative Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class; Counsel Is Adequate**

The standard of Rule 23(a)(4) is met if Plaintiffs satisfy a two-prong test.  First, the named representative must be able to prosecute the action vigorously through qualified counsel.  The proposed class representatives are committed to the action and are represented by experienced counsel highly experienced in class action litigation to prosecute the claims.[105]  Counsel satisfy Rule 23(g)(1)(C).[106]

Second, there can be no disabling conflicts between the interests of the named class representative and the members of the class.[107]  With regard to this prong of the adequacy test, the class representatives' interests are the same as the interests of the other members of the proposed classes, just as in nearly every state wage law case where the named plaintiffs hold the same positions as other class members.   Representative plaintiffs have interests in common with, and not antagonistic to, the class when they and other class members seek to put an end to a McDonalds's practices which deprive the

---

[103] TAC at ¶¶ 14-17.

[104] *Id* at ¶¶ 20-25.

[105] *See* Plaintiffs' Counsel's Résumés, attached as Ex. 32.

[106] Plaintiffs request that, pursuant to Rule 23 (g)(1), the Court designate as co-class counsel the law firms of Bartimus, Frickleton, Robertson & Gorny, PC,  Cuneo Gilbert & LaDuca, LLP, and StephanZouras, LLP.  In particular, Plaintiffs ask the Court to designate Chip Robertson, Tony DeWitt, Jon Tostrud, Jonathan W. Cuneo, Ryan F. Stephan and James Zouras as class-counsel.  The firms and these lawyers are experienced in class action and other complex litigation.  They have been involved in this matter from its beginning, investigated the potential claims and filed this action, have taken and defended depositions, and have advocated in support of and against motions, including this motion for class certification.  Over the course of the past 19 months, the firms have demonstrated knowledge of applicable law and the ability and willingness to commit sufficient resources to prosecute this action.  In short, all firms have demonstrated the ability to fairly and adequately represent the interests of the class.

[107] *Brancheau v. Residential Mortg.*, 182 F.R.D. 579, 589 (D. Minn. 1998).

class of wage benefits to which they are entitled.[108]   There are no actual or potential conflicts of interest.  The requirements of Rule 23(a)(4) are met.

## II.      THE REQUIREMENTS OF RULE 23(B) ARE SATISFIED

In addition to the four requirements discussed above under Rule 23(a), the action must satisfy at least one of the three parts of Rule 23(b) in order to be certified.  Here, the action satisfies Rule 23(b)(3).

### Rule 23(b)(3):  Common Questions of Law and Fact Predominate and a Class is Superior to Joinder of Claims or Thousands of Lawsuits

Certification is appropriate under Rule 23(b)(3).  A class may be certified under Rule 23(b)(3) when:

> The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Rule 23(b)(3) specifies four factors pertinent to the Court's determinations regarding predominance and superiority:

(A) the class member's interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

### i) Common Questions Predominate

The numerous common questions of law and fact set forth in the commonality discussion above predominate over individual questions because McDonald's alleged underlying activities and impact of McDonald's policies and practices affected class

---

[108] *Wang*, 231 F.R.D. at 609.

members in the same manner: they were subjected to a policy of suffering work without

pay.

> In determining whether the plaintiff has met Rule 23(b)(3)'s more stringent requirement that common issues predominate over individual issues, the court inquires into the nature of the evidence required to prove the case. *Blades*, 400 F.3d at 566. If, to make a prima facie showing on a given question, the members of a proposed class must present evidence that varies from member to member, then it is an individual question for purposes of Rule 23(b)(3); if the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

> As with the commonality requirement, however, the presence of individual issues such as damages does not automatically preclude a finding of predominance under Rule 23(b)(3).[109]

Moreover, although this class-wide proof would, in fact, resolve the issue of liability, the

predominance test under Rule 23 does not require that it do so. To predominate, common

questions need not be dispositive of the action because "predominant," as used in the

rule, does not mean "determinative."[110]   Rather:

> courts have held that [a class action] can be brought ... even though there is not a complete identity of facts relating to all class members, as long as a 'common nucleus of operative facts' is present.... The common questions need not be dispositive of the entire action.... Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the [class] will be considered proper.[111]

And, in this case, virtually all issues advancing the litigation are common.[112]

In considering whether common questions predominate, courts are to consider

questions of law as well as fact. Here, common ***factual*** issues outweigh the individual

ones, and there are no individualized ***legal*** issues whatsoever, rendering this analysis

facile and the result obvious. And, as discussed in more detail, *infra,* while damages

---

[109] *Liles*, 231 F.R.D. at 575.

[110] WRIGHT & MILLER §1788 at 528-29.

[111] *Id.*

[112] *See also Mullen*, 186 F.3d at 627 (predominance is determined not by counting the number of common issues, but by weighing their significance). As explained in Newberg's treatise, while the meaning of "predominance" has remained enigmatic, at least "[m]ost courts have agreed on what the predominance test does not entail." NEWBERG §4.25 at 169.

issues (which are expected to remain for later resolution) are, to at least some degree, unique to each class member, they can be addressed through the use of common trial management tools and, in any event, come nowhere close in number or significance to overshadowing the myriad uniform questions that can and should be tried class-wide.

By way of illustration, all common factual and legal questions identified above can be tried on a class-wide basis. And, resolution of these questions based on common and class-wide evidence will "represent a significant aspect of the case," going a long way toward "resolv[ing] for all class members in a single adjudication" the same liability issues. Given this, "there is clear justification for treating the case as class rather than on an individual basis."[113] The reason: McDonald's "committed the same unlawful acts in the same method against an entire class."[114]

As the court explained in *Bouaphakeo v. Tyson Foods, Inc.,* an off-the-clock case, predominance was satisfied because all class members needed to prove was that "they are not paid for all the work they perform under Tyson's gang time compensation system. To do so, the class members would need to show that they perform work which goes unpaid" with common evidence.[115] The court emphasized that although not all employees paid under Tyson's payroll and time-keeping system ("gang time") were treated uniformly or similarly by the policy, the court explained that "common evidence," if believed, showed that "Tyson's compensation system cannot account for even the basic or standard PPE employees need to don, doff, and clean would establish a prima facie case for the class." Thus, while "[i]ndividual questions may exist, … the court [did] not believe they predominate."[116]

---

[113] *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla. 1997); *see Allapattah Servs. v. Exxon Corp.*, 188 F.R.D. 667, 674 (S.D. Fla. 1999) (quoting *Blackie*, 524 F.2d at 902  *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987); *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).
[114] *Kennedy*, 710 F.2d at 717.
[115] *Bouaphakeo*, 564 F. Supp.2d at 909.
[116] *Id*.

Similarly, here, evidence can show McDonald's time-keeping and payroll systems did not account for or capture time working during the computer shutdown nor compensate employees for uniform maintenance; duties that are required of every employee every pay-period.[117]   Indeed, it is patently obvious upon the face of McDonald's time sheets whether time was recorded during the overnight shift ISP/POS shutdown.

The preponderance of common issues in similar cases is why this matter is far from being the first case to achieve certification status for "off-the-clock" violations of state wage laws.[118]

## ii) Calculating Individual Damages Does Not Create An Individual Issue That Might Defeat Certification

McDonald's will likely argue that common proof cannot show all class members entitlement to damages, and parade before the Court evidence indicating class members belief that they have no damage claim.  The issue for the Court, however, is not whether "exceptions to the rule" exist, nor is to "identify every 'specific' instance in which a member of the plaintiff class has been 'injured or harmed by [McDonald's] actions or

---

[117] *See Lockwood*, 162 F.R.D. at 580 ("It is now well established that a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position").

[118] *See, e.g.*, *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005) ("off-the-clock" class certified); *U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775 (6th Cir. 1995) (same); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir. 1988) (same); *Spoerle v. Kraft Foods Global, Inc.*, 2008 WL 2002221 (W.D. Wisc. May 6, 2008) (same); *Torres*, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) (same); *Wang*, 231 F.R.D. 602 (C.D. Cal. 2005) (same); *Bull v. U.S.*, 68 Fed. Cl. 276 (Ct. Claims 2005) (same); *Velez v. Majik Cleaning Service, Inc.*, 2005 WL 106895 (S.D.N.Y. Jan. 19, 2005) (same); *Gutierrez v. Kovacevich "5" Farms*, 2004 WL 3745224 (E.D. Cal. 2004) (same); *Belbis, supra* (same); *Ladegaard*, 2000 WL 1774091 at * 4-5 (certifying class action for unlawful failure to pay employees for categories of work performed during a particular period of time); *Leyva v. Buley*, 125 F.R.D. 512, 518 (E.D. Wash. 1989) (FLSA and Rule 23(b)(3) class for OTC); *Brzychnalski v. Unesco, Inc.*, 35 F. Supp.2d 351 (S.D.N.Y. 1999); *Armijo v. Wal-Mart Stores, Inc.*, 142 N.M. 557, 168 P.3d 129 (N.M. Ct. App. 2007) (upholding certification of common law and statutory claims under New Mexico law for off-the-clock work despite employer evidence of individualized damages issues); *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d at 225-27 (same); *Braun v. Wal-Mart, Inc.*, 2003 WL 22990114 (Minn. Dist. Ct. Nov. 3, 2003) (certifying common law and statutory claims under Minnesota law for off-the-clock work and records-keeping violations); *Vignaroli*, 360 N.W.2d at 746-47 (upholding certification of wage claims under statute and contract theories, including intended beneficiary theory).

policies.' Rather, "plaintiffs' burden [on liability] is to prove by a preponderance of the evidence that [McDonald's] engaged in an over-all, class-wide practice" or policy that resulted in "off-the-clock work" by the class.[119] But, the parties are not at the liability stage. Instead, here, Plaintiffs' burden is to provide sufficient information to enable the Court to form a reasonable judgment that the requirements of Rule 23 are satisfied and whether it can be said that "central or overriding question[s]" exist, the singular "adjudication of [which] has important and desirable advantages of judicial economy compared to all other issues...."[120] In other words, individual issues regarding any class member's eligibility to make a claim for damages are irrelevant and inappropriate; whether common and individual issues may, on balance, be better adjudicated in a class action context is the inquiry.[121]

Moreover, whereas here, Plaintiffs common evidence would, if believed, enable a reasonable jury to conclude McDonald's did engage in a class-wide uniform policy or practice to violate the law, then predominance is satisfied.[122] To do this, plaintiffs generally establish unwritten policies by showing a pattern and practice of wage violations.[123] An "unwritten policy" can be inferred from numerous incidents, even when a defendant has a written policy (as is often the case and as McDonald's does) to the contrary.[124] Proof of a common policy does not demand showing all work situations are identical or that everyone is actually injured by the policy or that everyone states a valid claim.[125]

---

[119] *Salvas*, 452 Mass. at 357.
[120] NEWBERG §4.25 at 169-74.
[121] *Hale*, 231 S.W.3d at 230 (whether other class members must have suffered injury not relevant); *Vignaroli*, 360 N.W.2d at 745 (whether prevail on claims irrelevant).
[122] *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 604 (D. Minn. 1999).
[123] *E.g.*, *Brennan*, 482 F.2d at 827-28. This is similar to proving a "custom or policy" in §1983 cases.
[124] *Monnel v. Department of Social Services*, 436 U.S. 658, 690-91 (1978).
[125] *Dole v Solid Waste Servs.*, 733 F. Supp. 895, 902 (E.D. Pa. 1980); *see Lowers*, at *2 (same).

Additionally, the calculation of damages might be an individualized undertaking. But, here too, that individualized inquiry does not defeat class certification.[126]  "[M]ost class actions contemplate individual proof of damages, which necessarily entails the possibility that some class members will fail to prove damages."  There is "no authority that class certification should be ordered only under circumstances promising universal recovery within the class."[127]  And, should McDonald's make this argument, then it would be ignoring the possibility that Plaintiffs could prove damages on an aggregate basis.  Regardless, the burden on the Court is minimized because liability would be handled in a single proceeding leaving damages to be proven before a special master, magistrate, or even a committee of counsel to process on a claims-made basis.[128]

### iii.) A Class Action is the Superior Method of Adjudicating These Claims

Under the superiority inquiry, the court is to compare the possible alternatives to a class action and determine if any is superior to the proposed class action.  The alternatives to class action litigation in this case are individual lawsuits by class members. There is no doubt this would be more burdensome on the class members, and it would

---

[126] *See, e.g.*, *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) (affirming district court's determination that common issues predominated because "[a]lthough calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue"); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977) ("it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate); *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796, 798 (10th Cir. 1970) ("[t]he fact that there may have to be individual examinations on the issue of damages has never been held, however, a bar to class actions"); *Blackie v. Barrack*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does not defeat class action treatment."); *Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 412 (N.D. Miss. 2000) (certifying a class and noting that while the amount of damages suffered by each class member may have to be proven on an individual basis, the fact of injury is common to the class and concluding that "small differences in the amount of damages suffered by each class member will not preclude certification when the 'fact of injury' is common to all"); *Mendec*, 232 F.R.D. at 92-93 ("In almost any class action in which there are claims for damages, though, each plaintiff must establish his entitlement to damages and the extent of those damages.  That alone does not mean that a class should not be certified.").

[127] *Bell v. Farmers Ins. Exch.*, 115 Cal. App.4th 715, 744 (Cal Ct. App. 2004).

[128] NEWBERG §10:12.  Moreover, although numerous and substantial common issues do exist here, "[e]ven if the common questions do not predominate over the individual questions ... Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."  NEWBERG §4.25 at 174; *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986).

likely be less efficient use of judicial resources.  *Valentino v. Carter-Wallace,* 97 F.3d 1227, 1234-35 (9th Cir.1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation.").   Under such circumstances, the court finds the superiority requirement met.[129]

Here, there is no indication that individuals have an interest in controlling their cases or that another forum might be more convenient.  Nor is there a case previously on file or one that has been filed subsequently.  And, whatever manageability issues might arise, such issues "ordinarily do not prevent class certification."[130]  Again, as many court recognize, "[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action," including bifurcation of the liability and damages phases of the trial, the appointment of a magistrate judge or special master to proceed over individual damages proceedings, decertification of the class following the liability determination, with notice to the class members how to proceed to prove damages, and the creation of subclasses.[131]

Additionally, in deciding the "superior" method for resolving these claims, the Court considers the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."[132]  Here, there should be no doubt that numerous class members would not litigate their claims simply because it concerns their employer, is very time consuming, and is a costly endeavor.  To suggest claims be litigated separately is unrealistic.[133]

---

[129] *Bouaphakeo*, 564 F. Supp.2d at 909.

[130] NEWBERG §9:1; *Workers' Comp.*, 130 F.R.D. at 110 ("dismissal for management reasons is never favored").

[131] *Visa Check/MasterMoney*, 280 F.3d at 141; *see also* NEWBERG §4:32, at 287-88

[132] *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974).

[133] *Amchem*, 521 U.S. at 617 *In re Federal Skywalk Cases*, 95 F.R.D. 483, 488 (W.D. Mo. 1982) ("[t]he need to treat each victim equitably and to protect each defendant from a multiplicity of suits compels the concentration of this litigation in a particular forum").

Further, "a defendant's removal of a state class action significantly diminishes the merits of its challenge to the superiority of class certification under Rule 23(b)(3)."[134]  To remand the state law claims while retaining jurisdiction over individual federal claims "would be a poor use of judicial resources."[135]  Certification of Plaintiffs' claims, which Defendant removed to this Court, will conserve judicial resources, prevent inconsistent results, and aid the efficient resolution of issues and claims common to the entire class.

In addition, class treatment has particular advantages in cases involving wage claims because a class action "avoids subjecting each employee to the risks associated with challenging an employer" on an individual basis.[136]   In this case, McDonald's sent a clear message to its employees when it retaliated against named Plaintiff Mike Doyel for complaining about wage violations.[137]  This retaliation serves not only as a warning to other Named Plaintiffs and potential witnesses, it serves notice to other putative class members that McDonald's is keeping track of and scrutinizing all who assert their rights. A Rule 23 class action would allow current employees to assert their rights in a manner less likely to draw attention and risk reprisal.

Unless this case proceeds as a class action, numerous class members will, as a practical matter, be left without a remedy and McDonald's will have avoided much liability.  Discovery costs alone dwarf the potential recovery.  This is truly a case where to deny certification and "permit [McDonald's] to contest liability with each claimant in a single separate suit ... would ... give [McDonald's] an advantage which would be almost equivalent to closing the door of justice to all small claimants."[138]  Certification will help

---

[134] *Acosta v. Scott Labor LLC*, 2006 WL 27118, at 5 (N.D. Ill. Jan. 3, 2006).

[135] *Id. See also In re Farmers Ins. Exch.*, 2003 WL 23669376 at 7 (considering FLSA and state claims in same forum "makes sense"); *id.* (class action is superior when individual claims "would be a great strain on judicial resources"); *Wang*, 231 F.R.D. at 614 (individual actions create a danger of conflicting decisions).

[136] *Wang*, 231 F.R.D at 614.  *See also Scott*, 210 F.R.D. at 268 ("class members may fear reprisal and would not be inclined to pursue individual claims").

[137] TAC at ¶¶73-81. *See also* [**Ex. __** Dep Pryor at 135_lns: 9-12 ("Q. So did Deina Morse and Shannon Plaggenburg tell you that because Michael had sued McDonald's he would never be promoted? A. Right.")]

[138] *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. 1941).

equalize the ability of the Plaintiffs, a large number of whom have relatively small claims, to prepare and pay for the advocacy of their rights.

Given the common legal and factual issues, any suggestion that each one of the 4,000+ class members should file their own case and review the tens of thousand of documents to present the facts and issues should be litigated on an individual-by-individual case basis would defy reality.  Even if such a course of action were feasible, it would not be desirable, consuming substantial judicial and private resources to pursue. Because it would be economically unreasonable for the class members to adjudicate their separate claims individually, the superiority of a class is evident.  All the requirements of subpart 23(b)(3) are satisfied.

## CONCLUSION

While the Defendants will inevitably argue compliance with wage and hour laws and their promises to the Plaintiffs, there is no dispute that all Plaintiffs: were classified as exempt and paid a similar rate of pay; were subjected to Defendants' standardized policies and practices, including those dealing with Defendants' time keeping, pay and dress code; and, shared the same duties.    There is also no doubt that the issues set out in Legal Argument Section I, Paragraph (b), subparagraphs a-q, above, are certifiable and should be determined on a class wide basis:

These questions can be answered and liability determined on a class wide basis by looking at Defendants' standardized policies as well as its time and pay records.  Based on the foregoing and upon all files, records and proceedings herein, Plaintiffs ask the Court to grant Plaintiffs' Motion for Class Certification and appoint class counsel to represent the class.

Respectfully submitted,

.

35

BARTIMUS, FRICKLETON,
ROBERTSON & GORNY, PC


_____/s/ Anthony L. DeWitt_____

Edward D. Robertson, Jr., MBE #27183
Mary D. Winter, MBE # 38328
Anthony L. DeWitt, MBE 41612
715 Swifts Highway
Jefferson City, MO  65109
(573) 659-4454
(573) 659-4460 (Fax)
aldewitt@sprintmail.com

STEPHAN ZOURAS, LLP
Ryan F. Stephan
James B. Zouras
205 N. Michigan Avenue
Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 *f*
rstephan@stephanzouras.com

CUNEO GILBERT & LaDUCA
Jonathan W. Cuneo
Jon A. Tostrud
Cuneo Gilbert & LaDuca, LLP
507 C. St., NE
Washington, D.C. 20002
Telephone (202) 789-3960
Fax (202) 789-1813
jtostrud@cuneolaw.com

**ATTORNEYS FOR PLAINTIFFS**


CERTIFICATE OF SERVICE


COMES NOW, Plaintiff, and certifies that a true and complete copy of the foregoing was

served on counsel for defendant through the Court's electronic filing system, ECF, on

this 7th day of December, 2009.

_____ /s/ Anthony L. DeWitt _____