**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| AMY DOYEL, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 4:08-CV-1198 CAS |
| v. ) | |
| ) | |
| MCDONALD'S CORPORATION, et al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Defendants oppose the motion, and it is fully briefed. Because the Court finds that common issues do not predominate over individual issues that need to be litigated to resolve plaintiffs' claims, the motion will be denied.

**I.     Background**

This action arises out of allegations that defendant McDonald's Corporation ("McDonald's") systematically failed to pay its hourly employees for all time worked.[1] Plaintiffs Amy Doyel, Michael Doyel, Alex Prodes, and Dan Pryor bring this action on behalf of themselves and a putative class of all current and former hourly employees who worked for McDonald's in Missouri during the applicable statute of limitations. They bring their action in six counts: violation of the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500 *et seq.* (Count I); unjust enrichment (Count II); quantum meruit (Count III); breach of implied contract (Count IV); violation of the Fair

---

[1]Plaintiffs have also named as defendants Daniel Garrett, Raymond O'Laughlin, and Richard Orf. Plaintiffs allege these individual defendants are corporate officers of defendant McDonald's. For ease of reference, the Court will simply refer to defendants collectively as "McDonald's."

Labor Standard Act ("FLSA") (Count V); and retaliation in violation of the FLSA (Count VI). For relief, plaintiffs seek a declaration that defendants violated the MMWL, back wages, liquidated damages, injunctive relief, interest, attorneys' fees, and costs.

Plaintiffs are all residents of St. Louis, Missouri and worked as hourly employees at the McDonald's restaurant of Oakville, located at 5537 Telegraph Road. In their third amended complaint, plaintiffs allege they were denied meal and rest breaks by McDonald's. Plaintiffs also allege McDonald's encouraged their employees to begin work before clocking in, to work during breaks, and to continue working after clocking out. Finally, plaintiffs allege McDonald's required them to wear a "clean and pressed" company-issued uniform, without compensating them for their time spent cleaning and pressing the uniform.

By their motion for class certification, plaintiffs seek to certify the following class:

> All individuals who were employed or are currently employed by the Defendants, their subsidiaries or affiliated companies, as hourly paid employees in the state of Missouri at any time during the relevant statute of limitations period.

Plaintiffs submit only their Missouri state law claims for certification under Federal Rule of Civil Procedure 23. These claims are for (1) recoupment of unpaid wages under the MMWL; (2) breach of contract; and (3) unjust enrichment and quantum meruit. Plaintiffs are not seeking class certification with respect to their allegations under the Fair Labor Standard Act.

**II. Discussion**

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). The "rigorous analysis" under this preliminary inquiry "involve[s] the consideration of what the parties

must prove." Elizabeth M. v. Montenez, 458 F.3d 779, 786 (8th Cir. 2006). "[T]he court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005). "The closer any dispute comes to the heart of the claim, the more cautious the court should be in ensuring that it must be resolved in order to determine the nature of the evidence the plaintiff would require." Id. at 567.

### A. Federal Rule of Civil Procedure 23(a)

To determine whether class certification is appropriate, a court first looks to see whether the four prerequisites set forth in Federal Rule of Civil Procedure 23(a) are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); Elizabeth M., 458 F.3d at 786. Plaintiffs have the burden of showing that these and the requirements of Rule 23(b)(3) have been met. Id. at 785.

McDonald's argues that plaintiffs cannot meet the typicality and adequacy requirements of Rule 23(a). McDonald's argues plaintiffs' alleged injuries are not typical of the injuries plaintiffs allege were suffered by other putative class members. For example, plaintiffs seek to represent employees whose recorded breaks of less than 20 minutes were increased manually to greater than 20 minutes, but none of the plaintiffs experienced any such injury. Additionally, McDonald's argues the purported class contains managerial and non-managerial employees, which creates irreconcilable intra-class conflicts. The Court does not need to resolve these issues. For the reasons set forth

below, the Court concludes that the predominance and superiority requirements of Rule 23(b)(3) bar class certification. Therefore, the Court will not further address the issues of typicality and adequacy.

**B.     Federal Rule of Civil Procedure 23(b)**

In addition to satisfying the prerequisites of Rule 23(a), plaintiffs must satisfy one of the requirements of Rule 23(b) to maintain a class action. See Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Under this Rule, a class will be certified only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

(1)     Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchen Prods., Inc., 521 U.S. at 623. The standard for certification imposed by Rule 23(b)(3) is more demanding than the commonality requirement of Rule 23(a), and mandates caution, particularly where "individual stakes are high and disparities among class members are great." Id. at 623. The nature of the evidence necessary to resolve a question determines whether that question is common or individual. If, to make a prima facie showing on a particular issue, plaintiffs will need to present evidence that varies from one class member to the next, then the issue raises an individual question. If the same evidence can suffice for each member of the class on an issue, then it becomes a common question. Blades, 400 F.3d at 562.

The MMWL and common law claims plaintiffs seek to certify are based on the following alleged misconduct: McDonald's systematically (1) edited or "shaved" plaintiffs' time records to reduce their pay; (2) deducted time for breaks that were not taken; (3) required plaintiffs to work off

the clock; and (4) required plaintiffs to wash and iron their uniforms without pay.[2] The Court has reviewed each of these claims separately, and agrees with McDonald's that the issue of whether there are violations of the MMWL and common law cannot be decided on evidence relevant to the class as a whole.

### *(a)   Shaving Plaintiffs' Time*

Plaintiffs allege that McDonald's systematically edited or "shaved" plaintiffs' time records to reduce their pay. Plaintiffs state that one of McDonald's key business objectives is to increase profits and cut labor costs. For evidence, they point to a memo from McDonald's Regional Leadership Committee, stating "Implement 'zero overtime policy' within your restaurants. Find a 'hidden 5.7 hours' by monitoring clock in/clock out time to avoid losing $15K, a year!" and a spreadsheet showing supervisors how they could save between $11,610 and $17,172 per store per year by cutting crew members' hours by one or two hours per week. (Pl. Ex. 29 and 30).

Plaintiffs state that McDonald's allows its managers to make manual edits to employees' time punches. Plaintiffs argue that the only legitimate edit to a time punch is when an employee forgets to clock in or clock out. When an employee forgets to make a punch, his or her time is "unbalanced," meaning that there is a clock in without a corresponding clock out, or vice versa. Plaintiffs conclude that only an "unbalanced" time punch should be edited. As evidence that McDonald's is shaving employee time in a systemic fashion, plaintiffs point to McDonald's expert report which shows that

---

[2]Throughout their motion, plaintiffs refer to McDonald's system of keeping time records. The Court has already dismissed plaintiff's former Count II, which alleged violations of Missouri's record keeping statute, Mo. Rev. Stat. § 290.520. See Doc. 72 at 4-5. Plaintiffs' continued argument regarding McDonald's practices of keeping time records is not relevant to the claims for which they seek class certification. Nor is it relevant whether McDonald's employees understand the requirements related to Missouri's record keeping statute.

10.15% of all balanced shifts were edited. As further evidence of alleged misconduct, plaintiffs state that 3.7% of all time edits were to insert a break of 20 minutes or more that "simply [was] not taken or recorded." Another 2% of all time was "simply shaved resulting in additional pay violations." As an example of an unlawful edit to employee time, plaintiff Dan Pryor testified that when he worked the overnight shift, his time record would reflect that he took a 30-minute break that he did not take.

Plaintiffs suggest that "by looking at Defendants' time punch edit reports on a classwide basis, we should be able to identify improper and unexplainable time edits for all plaintiffs and calculate a proper measure of damages." (Mot. at 17). As to the requirement of Rule 23(b)(3) that common questions predominate over individual questions, plaintiffs state, without example, that "common *factual* issues outweigh the individual ones, and there are no individualized *legal* issues whatsoever, rendering this analysis facile and the result obvious." (Mot. at 28) (emphasis in original). Again without specifics, plaintiffs state further:

> By way of illustration, all common factual and legal questions identified above can be tried on a class-wide basis. And, resolution of these questions based on common and class-wide evidence will "represent a significant aspect of the case," going a long way toward "resolv[ing] for all class members in a single adjudication" the same liability issues. Given this, "there is clear justification for treating the case as class rather than on an individual basis." The reason: McDonald's "committed the same unlawful acts in the same method against an entire class."

(Mot. at 29) (quoting Leszczynski v Allianz Ins., 176 F.R.D. 659, 675 (S.D. Fla. 1997) and Kennedy v. Tallant, 710 F.2d 711, 177 (11th Cir. 1983)). Throughout their briefing, plaintiffs cite only to McDonald's internal documents encouraging its managers to reduce overtime and their store's "average hourly wage" and McDonald's expert's report regarding what percentage of employee computerized time punches were edited. See, e.g., Pl. Exs. 29 and 30. Plaintiffs say nothing about

the nature of the evidence that will suffice to resolve a question of liability, and importantly, whether the nature of this evidence will vary from class member to class member. In fact, plaintiffs do not address how they intend to meet the requirement in the Eighth Circuit that the nature of the evidence required to prove a violation be common to the class. This is the key factor the Court looks to in assessing whether common issues predominate over individual issues. See Blades, 400 F.3d at 566 ("The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.").

As McDonald's points out, the evidentiary record reflects many lawful reasons why managers edit employees' computerized time punches, many of which are to ensure that employees are properly paid. For example, edits are required when an employee forgets to punch in or out for work, forgets to punch in or out for break, punches in or out early or late, or accidentally enters two punches instead of one. At deposition, plaintiffs conceded that their own time punches were edited for these reasons. Plaintiff Michael Doyel admitted that his time punches were edited on several occasions to provide him with more time worked than his original time punches indicated. In one instance, his time punch reflected that he had clocked out at 11:01, and it was manually altered to reflect a clock-out time of 11:45. (Doyel Dep. at 155). Similarly, McDonald's produced many declarations of the putative class members, who stated that their time punches were edited in various instances when they had made mistakes punching in or out or when their computerized time punches were inaccurate. These employees were properly paid in each instance.[3]

---

[3] For example, declarant Mickey Spurr, an employee in Arnold, Missouri, stated that he once arrived for his shift at 5 a.m. but the dining room was locked because his shift manager was running late. When his manager arrived, he informed her that he had been waiting since 5 a.m. The manager used the store computer to edit Mr. Spurr's time entries for that day to reflect the waiting time as hours worked. See Ex. R at ¶ 9.

Because there are legitimate reasons to manually edit an employee's computerized time punches, both balanced and unbalanced, merely looking to records of time punches that were edited does not establish that an employee was not paid for hours worked. To make a prima facie showing on the question of whether the class of employees were paid for all time worked, plaintiffs will need to present evidence of why their time punches were altered. This evidence will vary from member to member, and from time punch to time punch. Plaintiffs state, without citation, that McDonald's provided "uniform tools and methods for its management to shave time and actually shaved over 7% of all time actually worked by Plaintiffs. By looking at Defendants' time punch edit reports on a class wide basis we should be able to identify improper and unexplainable time edits for all plaintiffs and calculate a proper measure of damages." (Pl. Mot. at 16-17). Based on the evidentiary record, plaintiffs are incorrect. While defendants' time punch edits do show when time is edited to either add or subtract time, the time edits do not reflect *why* the time is being edited. The Court cannot presume on a classwide basis, as plaintiffs suggest, that every edit that subtracts time from an employees' time punches was "shaving" off time the employee actually worked. Nothing would distinguish this improper editing of time from a proper editing of time, for example, when an employee clocks in early or forgets to clock out for a break. See In Re: Wal-Mart Wage & Hour Emp. Prac. Litig., 2008 WL 3179315, \*\* 18-19 (D. Nev. June 20, 2008) ("[R]esolving Plaintiff's substantive claims will involve particularized inquiry into each alleged instance of unpaid time to determine if the time records accurately reflected employee behavior or instead documented an instance of unpaid time the employee worked."); Baas v. Dollar Tree Stores, Inc., 2008 WL 5273724 (N.D. Cal. Dec. 19, 2008) (denying certification where propriety of edits to time entries would have to be determined on case-by-case basis).

Additionally, plaintiffs have presented no evidence that the editing practices at McDonald's throughout Missouri are similar or uniform. McDonald's expert, Ted Anderson, a labor economist, analyzed McDonald's electronic time punch entries on 490,876 shifts across McDonald's Missouri restaurants. His analysis showed that on approximately 2% of shifts, reported starting or ending times were edited in a manner that reduced reported time; conversely, on approximately 1% of shifts, reported starting or ending times were edited to increase reported time. Edits were made to lengthen reported break times on less than 1% of shifts; and on another .12% of shifts, reported break times were reduced, increasing the employees' recorded work time. (Def. Resp., Ex. KK at 8-9). Additionally, Anderson's analysis revealed significant variation in the incidence of time edits from store-to-store and, within in a store, from shift-to-shift. The question of whether McDonald's improperly "shaved" plaintiffs and the purported class members' time cannot be resolved on a classwide basis through common evidence, or even on an employee-by-employee basis, but must be resolved on a time punch-by-time punch basis. These highly individualized, fact intensive issues predominate over common questions and preclude class certification. See In re Wal-Mart Wage & Hour, 2008 WL 3179315 at 18; Baas, 2008 WL 5273724.

### *(b)* *Automatic Break Deduction*

In addition to shaving time from employees' time punches, "plaintiffs unequivocally aver that McDonald's automatically deducted break times even though they worked through such 'break periods.'" (Pl. Mot. at 15). Plaintiffs also state that McDonald's had a policy to automatically deduct a break period for the time when its computers shut down and rebooted each day. (Third Am. Compl. at ¶ 21; Reply at 7).

Plaintiffs cannot meet the predominance requirement with respect to their claim of automatic break insertions for the same reasons they cannot meet the predominance requirement for their time shaving claims. Based on the record, it appears possible to find edits to employee time in which a supervisor manually inserted a break into an employee's time. While this is common evidence that a break was inserted, this is not common evidence that McDonald's was violating MMWL or common law. To establish a prima facie case on the issue of liability, plaintiffs must show that these breaks were inserted but the employee did not take a break. This cannot be done on a classwide basis with evidence common to the class. As McDonald's has shown through employee declarations, employees have forgotten to clock in and out all day and have forgotten to clock in and out for breaks. See Bench Dec. at ¶ 10; Johnson Dec. at ¶ 8; Nash Dec. at ¶ 8. The Court cannot determine on a classwide basis whether breaks inserted in employees' time records violated the MMWL and common law without testimony of the employee regarding whether they actually took a break. See, e.g., In re Wal-Mart Wage & Hour Emp. Prac. Litig., 2008 WL 3179315, **18-19 (D. Nev. June 20, 2008). Because edits to the time punch records would show only that a break was manually inserted, not whether an employee actually worked through a recorded break, evidence of the "automatic break" claim must be testimonial in nature. Testimonial evidence cannot be taken on a classwide basis. To establish their claims of automatic break deductions, plaintiffs will need to present evidence that varies from class member to class member. Accordingly, they cannot satisfy Rule 23(b)(3) with respect to these claims.

Finally, in their motion, plaintiffs refer to the claim in their third amended complaint that McDonald's automatically deducts time for the daily 30-minute computer reboot. (3d Am. Compl. at ¶ 21). Although reference to this allegation is minimal, plaintiffs state that common questions

predominate as to this claim, and "it is patently obvious upon the face of McDonald's time sheets whether time was recorded during the overnight shift ISP/POS shutdown." (Mot. at 30). Plaintiffs have not provided the Court any such time sheets showing whether time was recorded during this shut down. While plaintiffs have not cited any evidence supporting their claim, the deposition testimony of three named plaintiffs touch on this issue. Plaintiffs Amy Doyel, Michael Doyel, and Alexander Prodes testified that after working an overnight shift, a morning manager would alter their time punches to record a 30-minute break during the computer shut down. (Def. Ex. B, A. Doyel Dep., 19; Ex. C, M. Doyel Dep. 180; Ex. K, Prodes Dep. 123-24).

To refute plaintiffs' assertion that common evidence can be used to establish this claim, McDonald's produces the testimony of its expert in charge of the ISP timekeeping system, Michael Lewis. Mr. Lewis testified that although the POS system (the cash registers where employees punch "in" and "out" for shifts) in each restaurant restarts each day for a period of time, this activity does not result in a shutdown of the ISP timekeeping system, which is a wholly separate system. Nor does it result in any insertion of a break into employee time records or any systematic loss of time or pay. (Def. Ex. E, Lewis Dep. 33-36, 39-40, 141-142, 147-148). Additionally, McDonald's outside expert, Ted Anderson, found no evidence that break punches were uniformly inserted at any store. (Def. Ex. KK, Anderson Report at 6-8).

After approximately six months of class certification discovery, plaintiffs have offered no evidence that McDonald's has any official policy regarding automatic deductions for reboots of the computer. In fact, plaintiffs have offered no evidence that breaks were inserted through any automated process. The only evidence presented to the Court in support of this claim is the deposition testimony of three individual plaintiffs whose allege particular managers manually edited

their time to reflect a 30-minute break during the computer reboot. Plaintiffs bear the burden of proving that their claim can be established with proof common to the class. Plaintiffs have presented no evidence that McDonald's automatically deducted break times, and no evidence common to the proposed class. As such, the Court finds plaintiffs have not met their burden of showing common issues predominate over individual issues under Rule 23(b).[4]

### *(c)* *Off-The-Clock Claims*

In addition to their claim that McDonald's shaved time and automatically inserted breaks into employee time records, plaintiffs allege that they regularly performed work, such as making bank deposits and picking up product from other restaurants, without pay and without any practice for recording such time worked. These off-the-clock claims suffer the same defect as plaintiff's automatic break claims—common evidence cannot make out a prima facie showing of a violation. The Court previously noted that plaintiffs' off-the-clock claims would likely require individual case-by-case analysis. See Doc. 72 at 10 (citing Diaz v. Electronics Boutique of Am., 2005 WL 2654270, *5 (W.D.N.Y. Oct. 17, 2005) and Lawrence v. City of Philadelphia, 2004 WL 945139, *2 (E.D. Pa.

---

[4]Although the Court finds it unnecessary to analyze the factors of Rule 23(a) with respect to plaintiffs' other claims of alleged misconduct in violation of MMWL and common law, it finds that with respect to the claim of automatic break insertions during the computer reboot, in addition to not meeting the predominance requirement of 23(b)(3), plaintiffs have not satisfied the Rule 23(a)(3) typicality requirement. Typicality under Rule 23(a)(3) means that there are "other members of the class who have the same or similar grievances as the plaintiff." Donaldson v. Pillsbury Co., 554 F.2d 825, 830 (8th Cir.), cert. denied, 434 U.S. 856 (1977). Plaintiffs have offered no support for their assertion that other purported class members were denied wages for time worked during the computer reboot. Plaintiffs only support of these claims is the individual testimony of three named plaintiffs regarding manual edits made by particular morning managers at the McDonald's restaurant in Oakville. Plaintiffs have provided no evidence that their alleged injuries were typical of injuries suffered by others in their restaurant, let alone employees in other restaurants. In fact, the unrebutted evidence presented by McDonald's experts establishes that the automatic reboot of the computer does not result in any insertion of a break into employee time records or any systematic loss of time or pay.

Apr. 29, 2004)). After the close of class certification discovery and briefing, the Court is now convinced that common evidence cannot suffice to make out plaintiffs' prima facie showing on this question.

By definition, plaintiffs' off-the-clock work would not be reflected in the employee's recorded time punches. The Court cannot determine on a classwide basis whether an employee was required to make a bank deposit or pick up product from another store off the clock. Nor can the Court determine on a classwide basis whether an employee emptied the trash or salted the parking lot off the clock. These are questions of fact that will differ for each plaintiff, and would require an examination by the Court of individual circumstances of each alleged instance. See Lawrence v. City of Philadelphia, Penn., 2004 WL 945139 at *2 (E.D. Pa. Apr. 29, 2004) ("[T]he 'off-the-clock' claim does not involve regularly scheduled time that is worked by all members of the class. Rather, each of the Plaintiffs may potentially claim that on any given day he or she arrived early or departed outside of their regularly scheduled hours and were not compensated for such. The circumstances of those individual claims potentially vary too widely to conclude that in regard to their 'off-the-clock' claim, the Plaintiffs are similarly situated.").

The evidence to support such an off-the-clock claim would have to be testimonial. Without repeating the analysis of plaintiffs' automatic breaks claim, plaintiffs' off-the-clock allegations would require the Court to look at each shift of each class member and determine whether that employee worked off the clock, for how long, and did he report the time worked. Plaintiffs offer the Court no answer to resolve the off-the-clock claim on a classwide basis, stating only "[b]ecause Defendants' timekeeping system only permits employees to punch in at the store, whether or not Plaintiffs performed additional unpaid work off the clock is certifiable and should be determined on a class wide

basis." If plaintiffs' allegations are true, the nature of the evidence that would be sufficient to prove such a violation is individualized and would vary from class member to class member.

### *(d)* *Plaintiffs' Uniform Claims*

Plaintiffs allege that McDonald's dress code required plaintiffs and the purported class to wear clean and pressed uniforms, but did not pay for this time worked. "Specifically, Defendants failed to provide time sheets or any other method for class members to punch in or record time spent cleaning and ironing their uniforms." Without conducting any analysis of Rule 23, plaintiffs then state their "proposed class is certifiable on this basis alone." (Pl. Mot. at 17).

McDonald's responds that plaintiffs' uniform claim is not legally cognizable, and the claims are not certifiable as class claims in any event. Citing the Fair Labor Standards Act, 29 U.S.C. § 254(a), and Department of Labor Field Operations § 30c12(b)(5)(1998), plaintiffs state it is well-settled under federal law that an employee is not entitled to compensation for time spent maintaining wash-and-wear uniforms that require no special cleaning process. Moreover, even if plaintiffs and their purported class were entitled to compensation, McDonald's asserts that the claims turn on highly-individualized inquiries regarding how particular employees handle the maintenance of their uniforms, and these claims are thus inappropriate for class treatment. (Def. Resp. at 25-26).

McDonald's employee appearance standards state that "[u]niforms are to be cleaned and pressed; they should fit properly." Different named plaintiffs testified differently about how they adhere to this appearance standard: plaintiff Dan Pryor testified that he washed his uniform with his ordinary clothes, and ironed his shirts and pants; plaintiff Alex Prodes testified that he washed his uniform with his ordinary clothes, and his pants did not require ironing; plaintiff Michael Doyel testified that he washed his uniform separately and ironed it. McDonald's also submitted the

declarations of another employee and would-be class member from the Oakville McDonald's, Janea Yvette West, who stated that she was never told that she was required to iron her uniform. Deina Morse, a supervisory employee at the Oakville McDonald's, testified that she never enforced a requirement that an employee iron a uniform, and stated that the uniforms do not need ironing. Additionally, based on the testimony of the named plaintiffs, McDonald's provided more than one uniform per person—one plaintiff had five shirts and "more of the pants than [he] could count." Pryor Dep. at 144. In fact, McDonald's "McOpCo Grooming & Appearance Policy for Crew" states that at a minimum each employee should have two complete uniforms, and if the employee works for more than thirty hours per week, the employee should have three shirts and three pairs of pants. See Def. Ex. Y at 8.

Common questions do not predominate over individual questions on plaintiffs' uniform claim because the nature of the evidence plaintiffs would have to use to resolve the question of liability varies from class member to class member. Assuming plaintiffs are entitled to compensation for time spent maintaining their uniforms, which the Court does not decide, each employee spends a different amount of time maintaining their uniforms. As illustrated above, even among the named plaintiffs, some wash their uniform with their street clothes, take the uniform from the dryer, and wear it. Another named plaintiff washes his uniform with his street clothes, but irons the uniform before wearing. Finally, another washes the uniform separately and irons it. The amount of time spent on such tasks, and thus the amount of allegedly compensable time, varies from class member to class member. Moreover, because the number of days per week each class member works differs and the number of uniforms per class member differs, the compensation for the task of cleaning and pressing a uniform varies significantly from class member to class member; and even for a single class member,

from week to week. Accordingly, the Court finds that class certification is inappropriate for plaintiffs' uniform claims. Accord Blades, 400 F.3d at 568-71; In re St. Jude Med., Inc., 522 F.3d at 841-42.

    2.    <u>Superiority</u>

The second inquiry under Rule 23(b)(3) calls for a court to determine whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Relevant factors to be considered in making this determination include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). These factors, particularly (D), do not weigh in favor of class certification.

A class action would not be the superior method for resolving the claims of all McDonald's Missouri hourly employees for unpaid wages. Based on the record, the alleged violations asserted by plaintiffs result not from company-wide policies, but from alleged isolated instances of managers deviating from McDonald's lawful policies which require employees to be paid for all time worked. Class treatment is not superior method to resolve these claims. If this case were certified, thousands of Missouri McDonald's workers would receive notices about the litigation. But because there is no common proof of MMWL and common law violations, each class member would have to establish each instance of time shaving or off-the-clock work individually and establish the amount of uncompensated time spent maintaining their wash-and-wear uniform. The litigation would devolve into a series of mini-trials for each class member and each instance of alleged time shaving or off-the-

clock work. See, e.g., In re Genetically Modified Rice Litig., 251 F.R.D. 392, 399-400 (E.D. Mo. 2008) (finding no superiority where case would "devolve into an endless series of 'mini-trials' that would fail to meet the goals of class certification"). As discussed above with respect to predominance, resolving plaintiffs' substantive claims will involve particular inquiry into each alleged instance of unpaid time to determine if the time records accurately reflected employee behavior. This would not meet the goals of class certification. Because of the likely difficulties in managing this purported class action and the hours of testimony it would entail, the Court finds plaintiffs have not met their burden of establishing that a class action is superior to other available methods for adjudicating the controversy.

**Conclusion**

For the foregoing reasons, the Court finds plaintiffs have not met the prerequisites for class certification. Plaintiffs' motion for class certification will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for class certification is **DENIED**. [Doc. 118]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 12th day of August, 2010.